STATE of Minnesota, Appellant,

v.

Timothy Dennis JENSEN, (CX–83–1719)
and Terri Lawrence Picha,
(CX–83–1722) Respondents.

Nos. CX–83–1719, CX–83–1722.

Court of Appeals of Minnesota.

May 29, 1984.

Paul G. Morreim, Freeborn County Atty., Albert Lea, for appellant.

Thomas Cary, Albert Lea, for respondents.

Heard, considered and decided by LANSING, P.J., and FOLEY and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Defendants Jensen and Picha were charged with burglary. After a consolidated omnibus hearing the trial court issued its findings of fact, conclusions of law and order suppressing defendants' initial confessions, a subsequent taped confession by Jensen, and a drill and drill bits returned by Jensen.

We affirm.

## FACTS

On April 7, 1983, Al's Auto Service in Glenville, Minnesota reported a burglary to the Freeborn County Sheriff's Department. Numerous items were reported missing, including an air drill and drill bits. Police found no evidence suggesting the burglar's identity at the scene except footprints near the window that had been forced open during the break-in.

A few days later, Deputy Wayne of the Sheriff's Department learned that informants, who wished to remain anonymous, had seen two unidentified persons walking away from the area of Al's Auto Service the night of April 6th. They reported that the two persons had been carrying what appeared to be an oil box, and were walking toward John Madson's residence. The informants also reported that a 1970 Dodge Charger or Roadrunner had been parked at the Madson residence.

By Sunday April 17, 1983 Deputy Wayne had located only one car meeting the description given by the informants. It was owned by defendant Picha. Picha, aged 19, was asked to come to the local law enforcement center, and early that afternoon he came to the center and met with Deputy Wayne.

Deputy Wayne advised Picha of his *Miranda* rights and informed Picha that he suspected Picha had burglarized Al's Auto Service. During the next hour Picha admitted that he had been at the Madson residence on April 6th with defendant Jensen, but denied burglarizing Al's. When Deputy Wayne learned that Jensen was waiting outside the center, he had Jensen come in for questioning.

While Picha waited in another room, Deputy Wayne gave Jensen his *Miranda* rights and interrogated him for about an hour concerning the burglary. Jensen, aged 18, refused to admit committing the crime. Finally, Jensen refused to talk further until he spoke with Picha. Deputy Wayne then allowed Picha and Jensen to meet alone in room 119 of the center.

Paragraph eight of the trial court's Findings of Fact reads as follows:

After about 15 minutes Deputy Wayne went to room 119 and spoke with both defendants. Wayne, upset with defendants' refusal to admit involvement, spoke to them in a rough manner, indicating that he could get a search warrant for Picha's garage and car, could summon them into court, and bring them back to Minnesota if they left the state. Deputy Wayne told defendants that he had witnesses who had identified the defendants and Mr. Picha's car at the scene of the robbery. He then told defendants that if they "would take care of this today" they would be charged only with burglary, and the County Attorney would stand silent at their sentencing. He told them that if they did not resolve it that day they would be charged with everything possible.

The record also indicates that Deputy Wayne threatened to put both Jensen and Picha under surveillance and work constantly on the case.

It is worth noting that Deputy Wayne made his offer good only for that Sunday afternoon. Under the Minnesota Sentencing Guidelines the State's promise to charge only burglary conferred no benefit on the defendants, although the promise was presented to them as though a substantial leniency were being bestowed upon them.

The deputy then left the room, allowing the defendants to confer again. After a few minutes the defendants agreed to give oral statements confessing to the burglary. Deputy Wayne taped the statements and gave copies to both defendants. At some point during this process Deputy Wayne told the defendants to return the goods so they would not have to make restitution. The defendants left the center at about 4:00 p.m. At 5:20 p.m. Jensen brought the air drill and drill bits to the center.

The next day Deputy Wayne learned that Jensen's taped statement had been inadvertently erased. Deputy Wayne called Jensen, who came to the center at Wayne's request and gave another statement virtually identical to the first. The record is silent on whether Deputy Wayne gave Jensen a *Miranda* warning before the second confession.

## ISSUES

1. Did the defendants voluntarily confess to the burglary?

2. Should the physical evidence surrendered by defendant Jensen after the confession be suppressed as tainted by an involuntary confession?

3. Is defendant Jensen's second confession tainted by the previous involuntary confession?

## ANALYSIS

The appeals in the matter of State of Minnesota vs. Timothy Dennis Jensen and State of Minnesota vs. Terri Lawrence Picha, co-defendants, have been consolidated for consideration by this Court.

### I. THE INITIAL CONFESSIONS

■ The fourteenth amendment due process clause requires that confessions be admitted only if they are made voluntarily. *Haynes v. Washington*, 373 U.S. 503, 513, 83 S.Ct. 1336, 1342, 10 L.Ed.2d 513 (1963); *State v. Biron*, 266 Minn. 272, 280, 123 N.W.2d 392, 398 (1963). The test is "whether the defendant's will was overborne at the time he confessed." *Lynumn v. Illinois*, 372 U.S. 528, 534, 83 S.Ct. 917, 920, 9 L.Ed.2d 922 (1963). "In short, the true test of admissibility is that the confession is made freely, voluntarily and without compulsion or inducement of any sort." *Wilson v. United States*, 162 U.S. 613, 623, 16 S.Ct. 895, 899, 40 L.Ed. 1090 (1896).

■ In determining the voluntariness of a confession, the court must examine the totality of the circumstances. *Haynes* 373 U.S. at 513, 83 S.Ct. at 1342; *State v. Biron*, 266 Minn. 272, 282, 123 N.W.2d 392, 399. The state must prove by a preponderance of the evidence that defendant voluntarily confessed. *State v. Merrill*, 274 N.W.2d 99, 106 (Minn.1978); *State v. Wajda*, 296 Minn. 29, 32, 206 N.W.2d 1, 3 (1973). On review, appellate courts "will

not reverse any findings of fact unless they are clearly in error, but ... will make an independent determination of voluntariness on the facts as found." *State v. Hardimon*, 310 N.W.2d 564, 567 (Minn.1981).

The parties here do not rely on *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), yet it is important to note the role *Miranda* plays in this area of law. The decision imposed a requirement that the state show the accused was informed of his rights. *Id.* at 479, 86 S.Ct. at 1630. One of these rights is the right to remain silent. *Id.* at 442, 86 S.Ct. at 1611. The Minnesota Supreme Court made the following key distinction:

> Whether an accused has waived his right to remain silent and whether he has confessed voluntarily are two separate issues. It is possible that an accused might waive his right to remain silent by expressly stating that he is willing to answer questions, and yet, by improper police tactics, be coerced into giving an involuntary confession.

*State v. Merrill*, 274 N.W.2d at 106, n. 4.

Courts have focused on numerous factors when examining the circumstances of a confession, including: (1) the defendant's age, experience, and mental capacity, *State v. Orscanin*, 283 N.W.2d 897 (Minn.1979); (2) the use of stress creating techniques, *State v. Garner*, 294 N.W.2d 725 (Minn. 1980); (3) the length and conditions of the confinement or interrogation, *Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); and (4) the use of promises, *State v. Biron*, 266 Minn. 272, 123 N.W.2d 392 (1963), and threats, *State v. Garner*, 294 N.W.2d 725 (Minn.1980).

An important Minnesota case on the admissibility of confessions is *State v. Biron*, 266 Minn. 272, 123 N.W.2d 392 (1963). In *Biron*, the police suspected that Biron and two juveniles had assaulted a woman causing her death. One of the juvenile suspects confessed and implicated Biron. Through several custodial interrogations Biron maintained his innocence, although the police persuasively argued that it was in Biron's best interest to confess. After the officers told Biron that he would be treated as a juvenile if he confessed, Biron admitted his involvement. The Minnesota Supreme Court reversed the trial court and suppressed the confession:

> [W]e must conclude that the statements and representations made by the officers to the defendant in this case constituted a sufficient inducement to deprive the confession of its voluntary character. The total circumstances under which the confession was given establish as a matter of law that it was induced by the statements and representations of the police officers. Their statements and representations were persuasive and could only have had the effect of implanting in the defendant's mind the hope that he would be treated as a juvenile offender or that in any event the charge against him might ultimately be disposed of on the basis of a lesser charge than the crime to which he confessed.

*Id.* at 282, 123 N.W.2d at 399.

Since *Biron,* the Minnesota Supreme Court has decided numerous confession cases. In *State v. Garner,* 294 N.W.2d 725 (Minn.1980), police suspected Garner had attempted to pass a bad check and arrested him. During the ensuing custodial interrogation, a police officer threatened to charge Garner with as many crimes as possible, lied about a possible firearm possession charge, and invaded defendant's personal space by repeatedly approaching defendant until he almost touched him. Garner, who was then intoxicated, confessed to the crime. The Supreme Court reversed the trial court's admission of the statement, condemned this type of interrogation, and held that the confession was not a voluntary product of free and unconstrained will. *Id.* at 727.

Confessions need not be in a custodial setting to be involuntary. In *State v. Raymond,* 305 Minn. 160, 232 N.W.2d 879 (1975) the trial court suppressed a confession obtained during a non-custodial interrogation. The supreme court affirmed, holding the confession involuntary because the police had promised not to charge Ray-

mond with a crime. *Id.* at 174, 232 N.W.2d at 887.

■ Several of the coercive factors identified by the courts are present here. As in *Biron*, Deputy Wayne promised that the defendants would be treated with leniency if they confessed. As in *Garner*, Deputy Wayne threatened police surveillance and harsh treatment in court unless the defendants confessed. The cumulative weight of those factors combined with the young ages of Jensen and Picha, Deputy Wayne's substantial exaggeration of the evidence against them and his insistence that they confess that day justified the trial court's suppression of the resulting confessions. We agree that the state failed to carry its burden to show that the defendants voluntarily confessed to burglary.

Viewing the totality of circumstances, recognizing the burden placed on the state, and giving the findings of the trial court the appropriate weight, we find that the first confession of both Picha and Jensen was not made freely, voluntarily, and without compulsion or inducement.

## II.

### THE PHYSICAL EVIDENCE

■ Under the derivative evidence rule, evidence discovered by exploiting a previous illegality is inadmissible. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Such evidence is considered "fruit of the poisonous tree." *Id.* at 488, 83 S.Ct. at 417. To admit evidence obtained after an illegality, the state must show that the evidence was obtained "by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 488, 83 S.Ct. at 417.

In *State v. Sickels*, 275 N.W.2d 809 (Minn.1979), the Minnesota Supreme Court elaborated on this rule:

Numerous factors bear on the application of this test, including the temporal proximity of the illegality and the evidence alleged to be the fruit of that illegality, the presence of intervening circumstances, the purpose and flagrancy of the mis-

conduct, and whether it is likely that the evidence would have been obtained in the absence of the illegality.

*Id.* at 814.

■ In the instant case, one hour and twenty minutes separated the confession from the return of the drill and bits. Counsel for the state argues that Jensen himself could have decided during that time to return the evidence. The record shows, however, that Deputy Wayne asked the defendants to return the stolen goods. There is no evidence in the record suggesting that the police would have discovered the drill and bits in the absence of defendants' confessions. The evidence was properly suppressed.

## III.

### JENSEN'S SECOND CONFESSION

■ Confessions occurring after an involuntary confession are subject to the derivative evidence rule described above. *State v. Sickels*, 275 N.W.2d 809. To be admissible the state must show that the illegal confession has not tainted the second confession. *State v. Weekes*, 268 N.W.2d 705, 709 (Minn.1978).

While "a later confession always may be looked at as fruit of the first," *United States v. Bayer*, 331 U.S. 532, 540, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654 (1947), the Minnesota Supreme Court has stated that it has "never adopted a presumption of illegality where a challenged confession followed earlier, warningless inculpatory or exculpatory statements, but ha[s] instead evaluated each case on its own facts." *State v. Dakota*, 300 Minn. 12, 18, 217 N.W.2d 748, 752 (1974). (*See State v. Hoskins*, 292 Minn. 111, 193 N.W.2d 802 (1972), where the court upheld the admissibility of a second confession where evidence showed that it was secured by a separate investigation. *See also State v. Raymond*, 305 Minn. 160, 232 N.W.2d 879 (1975), where the court held a second confession untainted by the first but nonetheless involuntary because induced by improper promises.)

Here no evidence was presented suggesting that Jensen was not still under the influence of the deputy's promises and threats at the time of the second confession. Rather, the evidence leads to the conclusion that Jensen believed he had no choice if he wanted to protect the deal he had made. Even though his statement had been erased, his co-defendant's had not. This confession was the fruit of the first and was properly suppressed by the trial court.

## DECISION

The district court's order granting the motions for suppression of initial statements of each defendant is affirmed.

The district court's order granting defendant Jensen's motion for suppression of one air powered drill and various drill bits and his second statement is affirmed.