**STATE of Minnesota, Respondent,**

v.

**John Douglas HOPPERSTAD, Appellant.**

**No. CX–84–1813.**

Court of Appeals of Minnesota.

May 7, 1985.

David W. VanDerHeyden, Rochester, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Fred R. Kraft, County Atty., Austin, for respondent.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

SEDGWICK, Judge.

John Douglas Hopperstad was convicted of violating § 10.06(3), disorderly conduct, of the Austin city ordinance, and he appealed. We reverse and remand for a new trial.

## FACTS

On January 17, 1984, Hopperstad was arrested for disorderly conduct following a scuffle at the Law Enforcement Center in Austin. In the course of the scuffle, Hopperstad was maced. He later claimed an

injury caused by the mace, and Austin police captain Gordon Bjorgo was requested to conduct an internal investigation into the incident in case any civil suit was initiated by Hopperstad.

All police reports prepared in connection with the criminal charge were disclosed to Hopperstad before trial, but internal investigation reports, including statements by police officers and other witnesses, were not. The morning of trial Bjorgo was served with a subpoena duces tecum demanding two taped statements of the defendant and the complete internal investigation file. Bjorgo appeared with the internal investigation file but the prosecutor objected to its release. The trial court required the defendant's taped statements to be turned over to the defense, but, without inspecting the file, ruled that the statements of police officers and others in the internal investigation file were not discoverable. The defendant's taped statements were played to the jury.

Later in the trial the prosecutor, over defense objection, had Bjorgo show the jury a videotaped "reenactment" of the incident which led to Hopperstad's arrest, in which a police officer played the part of Hopperstad. The reenactment tape was a part of the internal investigation file.

### ISSUES

1. Did the trial court err in ruling that statements of police officers and others in the internal investigation file were protected and not discoverable?

2. Did the trial court err in allowing a mock videotaped reenactment of the events surrounding the appellant's arrest to be played for the jury?

### ANALYSIS

#### I.

This case involves a misdemeanor. Discovery is governed by Minn.R.Crim.P. 7.03. Under that rule, defense counsel is entitled to inspect police investigatory reports. Additional discovery in misdemeanor cases is provided under the rules pertaining to gross misdemeanor and felony cases "by consent of the parties or motion to the court."

Appellant was provided with all police reports prepared in relation to the criminal charge. In addition, he was provided with the statements he gave investigators in connection with the internal investigation. He was not provided with statements given by police officers (who were required to give statements under penalty of losing their jobs) and by police dispatchers who testified at trial and who had observed the incident on a closed-circuit television system. Appellant contends he was entitled to those statements under Minn.R.Crim.P. 9.01, subd. 1(1)(a), (6) and (7).

Rule 9.01, subd. 1(1)(a) requires the prosecuting attorney, on request of defense counsel, to allow inspection of relevant written recorded statements made by persons the prosecutor expects to call as witnesses. Rule 9.01, subd. 1(6) requires the prosecuting attorney to disclose any material which tends to negate or reduce the guilt of the accused, and subd. 1(7) makes it clear that the obligation of the prosecuting attorney extends not only to material and information in his direct control, but also that under the control of his staff or "others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to his office." It is clear that the internal investigation report here contained statements made by persons who were later called as witnesses. It is also clear that the material was under the control of persons who participated in the investigation and who regularly report to the prosecuting attorney's office.

The State contends that reports in the file are protected under the state Data Practices Act, since they were not prepared for the criminal charge but for any civil action which might be filed. Minn.Stat. § 13.39, subd. 2 (1982), reads:

Data collected by state agencies, political subdivisions or statewide systems as

part of an active investigation undertaken for the purpose of the commencement or defense of a pending civil legal action, or which are retained in anticipation of a pending civil legal action, are classified as protected nonpublic data * * and confidential * * *.

Whether internal investigation reports made either in anticipation of a civil suit or in connection with disciplinary procedures must be disclosed to the defense in a criminal matter has not been determined by the supreme court. Furthermore, the lower court decisions cited by the State are inapplicable here because none duplicates the posture of this case—none is a criminal case where the defendant was attempting to obtain the reports.

 Since the police department file contains data "collected * * * as part of an active investigation undertaken * * * in anticipation of a pending civil legal action," Minn.Stat. § 13.39, subd. 2, does protect the police department's internal investigation file. The Rules of Criminal Procedure, however, also entitle the defendant to obtain anything exculpatory or any statements of witnesses. In such a case, we hold that it is the trial court's duty to review the file in camera to determine whether material exists which tends to negate evidence of defendant's guilt. If, in the trial court's discretion, the defendant's needs outweigh the need for confidentiality of the reports, those portions of the file should lose their protection. The trial court cannot rule that the entire file is protected without first reviewing it.

## II.

 Rule 401 of the Minnesota Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 provides that evidence which is not relevant is not admissible. Given this definition, we doubt the relevance of the videotaped reenactment of the incident that led to the

defendant's arrest. "Reduced to simple terms, any evidence is relevant which logically tends to prove or disprove a material fact in issue." *Boland v. Morrill*, 270 Minn. 86, 98–99, 132 N.W.2d 711, 719 (1965). A dramatization of one side's account of what happened at the Law Enforcement Center does not "tend to prove or disprove a material fact in issue."

Even if considered relevant, the videotaped reenactment cannot pass the hurdle provided by Rule 403, which states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

First, it was cumulative. It only restated graphically the testimony of the State's preceding three witnesses. Second, the videotape was prejudicial to defendant. Seeing the events depicted exactly as the State's witnesses said they happened is bound to affect the jury out of all proportion to its value as evidence. The videotaped reenactment should not have been admitted into evidence. We are also concerned about the basic fairness of allowing the admission of the videotape, which the State admits was part of the internal investigation file, but not allowing the admission of any other of the file's contents, on the ground the file was privileged.

## DECISION

The trial court erred in ruling that statements of police officers and others in the internal investigation file were not discoverable without reviewing the file first, and erred in allowing a videotaped reenactment of the events surrounding the appellant's arrest to be played for the jury.

Reversed and remanded for a new trial.