**STATE of Minnesota, Respondent,**

v.

**Newton Jasper CASH, III, a.k.a. Jim Teats, Appellant.**

**No. C1–85–2066.**

Court of Appeals of Minnesota.

Aug. 5, 1986.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., St. Paul, for respondent.

C. Paul Jones, State Public Defender, Laura S. Underkuffler, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by FORSBERG, P.J., and SEDGWICK and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Newton Cash was convicted on June 27, 1985, of third degree criminal sexual conduct in violation of Minn.Stat. § 609.344(b) (1984). He appeals from the judgment of conviction. We reverse and remand for a new trial.

## FACTS

On February 2, 1985, 15–year–old T.W. alleged that she had engaged in a consensual sexual relationship with appellant beginning in April 1982. At the time of the alleged relationship, T.W. was 13 years old and appellant was 21 years old.

T.W. made her allegations while a resident of Tri-House Center in Marshall, Minnesota, a residential treatment center for adolescents with severe behavioral problems, during a conversation with other Tri-House residents. Her comments were overheard by staff member, Tim Ehrke, who reported her allegations to his supervisor.

Appellant was tried by a jury, which found him guilty of violating § 609.344(b) (1984) (complainant between 13 and 16 years of age and offender more than 24 months older than complainant).

At trial, Officer Dean Cowdin of the Mankato Police Department testified to statements which he took from appellant. At trial, the State submitted a partial transcript of Cowdin's interrogation of appellant as an exhibit.

At the omnibus hearing appellant testified that Cowdin came to his home in the early morning of March 21, 1984. Appellant had never been interrogated by a police officer before. Cowdin asked appellant to come to the police station. Appellant believed that Cowdin's visit had to do with an unrelated case in which appellant was a witness. Cowdin had previously discussed that case with appellant.

When appellant arrived at the Law Enforcement Center, he was taken into an interrogation room. He was asked background questions, then read his *Miranda* rights. Cowdin told him he could exercise his rights at any time. A tape recorder was turned on, and appellant was told, for the first time, that he was being charged with third degree criminal sexual conduct.

As questioning commenced, appellant indicated that he was confused. He stated that he understood his rights, but that he did not know if he should say anything. He stated that he did not know if he should get a lawyer. The interrogator commenced questioning about allegations of sexual relations between appellant and juveniles under the age of 18 years. *Halfway through* the questioning Cowdin told appellant that appellant could stop the interrogation at any time.

At the omnibus hearing appellant testified that he was afraid to ask for an attorney because the officers were "getting upset," and they threatened to lock him in jail that night if he did not cooperate. He was

afraid that if he stopped the interrogation and asked for an attorney, he would be jailed. The officers did not offer to stop the interview nor did they let him think about contacting an attorney. Appellant testified that he was "shocked about the whole thing" and that he told this to the officers.

Appellant testified that at one point the officers turned off the tape but continued asking questions about alleged sexual relations with T.W. and two of her friends. The police agree that the tape was off for five to ten minutes. Appellant testified that while the tape was off, Cowdin also stated that he knew appellant was guilty "beyond a shadow of a doubt," and that appellant was sick and needed help. Appellant said Cowdin told him there were probably other juveniles with whom appellant had sex who the police did not know about. According to appellant, Cowdin told him that it would be better for him to confess.

Cowdin agreed that appellant had indicated that he was confused by the interrogation. Cowdin conceded that he turned the tape recorder off at one point, told appellant that he believed that appellant was involved and that it was in appellant's best interest to tell him about it. Cowdin testified that he told appellant that he could have him thrown in jail on probable cause, but that he had emphasized to appellant that they were not going to do that. Cowdin testified that he told appellant that he would be released at the conclusion of the interview. Cowdin acknowledged during cross-examination that he told appellant about Cowdin's not exercising his option of throwing appellant in jail to show that the police were acting as "nice guys." At the conclusion of the interrogation, the following exchange took place:

Q. [Cowdin] Did I or any police officer or law enforcement official threaten you or make any promises to get you to make this statement?

A. [Cash] No sir.

The court denied appellant's motion to suppress the entire transcript of the interrogation, but ordered certain portions of the transcript deleted. However, a clerk failed to black out all the statements ordered suppressed. One of the undeleted questions referred to "statements from * * individuals" which "allege that [appellant] had sexual intercourse with them * * *." Another asked whether appellant "ever furnish[ed] any liquor to T.W." or one of her friends.

The improperly edited transcript, containing the portions ordered stricken by the court, went to the jury. After conviction, appellant moved for a new trial, assigning several errors of law, including the improper submission of the transcript.

The trial court denied appellant's motion for a new trial, reasoning that appellant's counsel had the opportunity to check the exhibit before the State introduced it. The court also found that the undeleted portions did not amount to prejudicial error and noted that no trial evidence corroborated these allegations.

At the omnibus hearing appellant had also moved, under Minn.R.Crim.P. 9.01, subd. 2, to compel discovery of all notes, summaries, reports, and other records relative to T.W.'s treatment at Tri-House. Appellant argued that his sixth amendment right to confrontation required disclosure of the exact circumstances under which the allegations were made against him. Further, appellant maintained that the best evidence of the complainant's ability to tell the truth was likely to be found in the reports.

The State resisted the motion on the grounds that the information was privileged as a juvenile court record, under the Data Practices Act, and under Minn.Stat. § 595.02, subd. 1(j) as information disclosed to a sexual assault counselor.

After reviewing the file, the trial court denied the motion. The court ruled that the question was moot, stating:

[T]here is nothing in the file which is relevant and not already known to the Defendant. The file would reveal that the victim told a Group Leader at Try House Center that the assaults took

place at the times and places alleged in the Complaint. Virtually all the other materials in the file are reports to Blue Earth County Human Services and the Juvenile Courts. They relate to program plans for the victim, assessment of her needs, the personality traits she reveals to others, and those she herself observes. Much of the material relates to reported observations of those participating in her groups as reported to the group leaders. There is nothing in the file, other than the times and places of the assaults, relating to the offenses charged here, which either would lead to the discovery of relevant evidence tending or which would prove or disprove the crimes or which would mitigate the circumstances of them. Most of the information would be hearsay even if relevant and represents conclusions on the part of those reporting and would be inadmissible.

Lastly, the disclosure of information in the files could only lead to a request to be allowed to interrogate most of the juveniles in the Center as well as its personnel. This could only cause disturbance of those being treated and working at the Center. It is best for all concerned to protect the confidentiality of the records and to deny the Defendant the privilege of searching the records for something that is not there.

### ISSUES

1. Was the inadvertent admission of portions of appellant's interrogation transcript, portions which were ordered deleted, prejudicial error?

2. Did the trial court err by admitting the transcript of the officer's coercive interrogation of appellant?

3. Did the trial court's refusal to order production of the Tri-House records violate appellant's right of confrontation?

4. Did the trial court err by excluding evidence of T.W.'s sexual relationship with another man?

5. Did the trial court err by refusing to give the jury a specific cautionary instruction on appellant's AWOL status?

### ANALYSIS

### I.

*Transcript blackouts*

We hold that prejudicial error occurred when portions of the edited transcript of the interrogation given to the jury were not blacked out before the jury saw them. These blackouts were agreed to by the parties *and ordered by the court.* Before trial appellant had moved to black out from the transcript certain references to his alleged sexual relations with other minors and to supplying liquor to minors. The State did not object and the trial court so ordered. The trial court's clerk apparently was given the responsibility of going through the transcript and blacking out those portions. Appellant's counsel had no opportunity to review the transcript after the blacking out until just before the statement was offered and put into evidence by the State. Appellant's attorney in a post-trial affidavit explained that at that point another review of the exhibit by him would have been time consuming and confusing to the jury. Because he expected that the court's instruction would be followed, he did not review the exhibit again when the State introduced it.

The inadvertently undeleted portions contain references to appellant's furnishing liquor to certain minors, and the interrogator's questions about appellant's having sex with other minors:

Let me explain to you, Jim, basically where we're at. We have statements from the individuals. In these they allege that you had sexual intercourse with them * * *.

The State concedes that the court ordered those references stricken. The trial court confirmed, in its memorandum denying appellant's motion for a new trial, that the evidence was not supposed to go to the jury:

The court had directed that reference by the officer to statements of other girls claiming intercourse with the de-

fendant was not to be admitted in evidence because the state had advised the court that it did not intend to call these girls as witnesses in the trial. The court did not want evidence of sexual misconduct with others to be introduced in the trial in any way if witnesses were not going to be called to testify to that fact.

The parties agree that the State offered into evidence a transcript with the offending portions not blacked out. The State argues, based on the trial court's reasoning in other parts of its memorandum, that appellant's attorney shared in the error by not reviewing the transcript after it had been blacked out, and that the erroneous parts not deleted were not prejudicial.

The State further argues that because a police officer, at the start of his testimony, called the court's attention to the fact that one page of the transcript was missing, appellant's attorney was on notice that the State's entire exhibit was suspect. Therefore, the State argues, appellant's attorney had a duty to recheck the exhibit.

■ We do not agree. Each party bears responsibility for its own exhibits. The State had agreed that certain portions of the transcript would not go to the jury and it knew that the court had so ordered. It was incumbent on the State, as the party offering the exhibit, to insure that the exhibit offered into evidence did not contain the tainted phrases the court had ordered stricken. A party, knowing that part of its exhibit has been ordered stricken, cannot ignore that order and offer the unexpurgated edition. A party cannot operate on the theory that, if the exhibit slips by the other attorney unnoticed, the other attorney acquiesces, and if the other attorney notices the error and keeps the inadmissible portion out of evidence, nothing is lost as the offering party is no worse off then if it had followed the court's order the first time.

■ We do not accept the trial court's assessment that the error was harmless. Appellant was on trial for criminal sexual conduct in the third degree involving a 13–year–old girl. We would ignore reality and the common sense of a jury to conclude that a jury will not be unduly prejudiced against a defendant when the jury is allowed to see a written statement by a police officer made to the defendant in which the officer claims to have statements from other young individuals alleging that appellant had sexual intercourse with them. Appellant's defense in the case was a denial of sexual intercourse with T.W., and the allegations refer to similar contact with other girls.

Also, we note that the State did not set up the evidence of other misconduct through a *Spreigl* notice or Minn.R.Evid. 404.

■ The State claims that appellant did not properly preserve this issue by objecting at the precise time that the State offered the transcript into evidence. This does not bar raising the issue on appeal. Appellant timely objected to those portions of the transcript at the omnibus hearing prior to trial. The court sustained appellant's objection and ordered certain portions deleted. There is no claim that appellant's counsel noticed the omission but failed to bring it to the court's attention.

It appears that the court and both counsel shared to some degree in the inadvertent submission to the jury of certain parts of the statement that all three knew was not to go into evidence. No one appears to have acted wilfully but the harm was done. We accept appellant's explanation as to why he did not recheck the transcript to be offered to the jury at the moment the prosecutor offered it. We cannot find any explanation for the prosecutor who, intending to offer the transcript as part of his case, did not thoroughly check it after the blacking out was done. It was in his possession for some period of time prior to that point in the trial when it was offered. On these facts, the issue, having been fully briefed and considered by the trial court on a post-trial motion, was properly before this court for review.

## II.

### *Involuntary confession*

■ Appellant claims that the trial court erred as a matter of law in admitting any portion of his statement to the police. Statements made under police interrogation may be admitted into evidence only if they are voluntarily given with regard for an accused's due process rights. *Haynes v. Washington,* 373 U.S. 503, 513, 83 S.Ct. 1336, 1342, 10 L.Ed.2d 513 (1963); *State v. Gard,* 358 N.W.2d 463, 467 (Minn.Ct.App. 1984). The statement must be given "without compulsion or inducement of any sort." *Id.* (quoting *Wilson v. United States,* 162 U.S. 613, 623, 16 S.Ct. 895, 899, 40 L.Ed. 1090 (1896)). Nor may direct or implied promises be used to extricate a statement. *State v. Orscanin,* 283 N.W.2d 897, 899 (Minn.1979). The court must examine numerous factors when evaluating the circumstances of a statement, including the use of stress-creating techniques, promises, or threats. *See State v. Jensen,* 349 N.W.2d 317, 320 (Minn.Ct.App.1984).

■ We find that the statements were not voluntary, they were a product of a coercive atmosphere, and they were incriminating as they tended to support the State's theory of the case.

The interrogator used impermissible implied threats and promises. Appellant testified, among other things, that he was fearful that if he stopped answering questions and asked for an attorney he would be jailed. At one point during the interrogation, the officer turned off the tape recorder and deliberately continued asking appellant about alleged sexual relations with T.W. and two of her friends. The tape was off for up to ten minutes. The officer told appellant that they could have him locked up that day if he didn't finish the interview. The officer implied that if appellant did not respond to their gesture by cooperating, they could do something to him.

■ Given these facts, we hold the statement was involuntary and should have been suppressed.

## III.

### *Confrontation rights*

■ Appellant claims that the trial court violated his right of confrontation in refusing to order production of the Tri-House records. The right of an accused to confront witnesses is guaranteed by the sixth amendment. A primary interest secured by this right is the right to cross-examine those witnesses. *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Confrontation means more than physically confronting the witness, however. *Id.* It includes the opportunity to question the witness for purposes of delving into the witness' version of the facts, to test the witness' perceptions and memory, to probe for bias, and to impeach the witness' truthfulness. *Id.* at 317, 94 S.Ct. at 1110.

The trial court had to balance the effect of discovery of the Tri-House records, which the court had examined, against the State's interest in confidentiality. *See id.* at 319–20, 94 S.Ct. at 1111–12. It is impossible to second-guess the trial court's action because the Tri-House records are not part of the record. It is also not necessary to address this issue to resolve this appeal, because we reverse on other grounds.

However, we note that the trial court properly followed the procedure set out in *State v. Hopperstad,* 367 N.W.2d 546 (Minn.Ct.App.1985). The court reviewed the materials and made a discretionary ruling after weighing the competing interests. *See id.* at 547. We also note that appellant's counsel was able to impeach T.W.'s truthfulness without the Tri-House file.

## IV.

### *Complainant's other relationship*

Appellant argues that the trial court erred prejudicially by refusing to admit evidence that T.W. had a sexual relationship with another man at the time she said she was seeing appellant exclusively. Appellant's theory is that this evidence pro-

vides T.W. a motive to invent her relationship with appellant, i.e., that she was protecting this other man by whom she had become pregnant. We address this issue because it is likely to arise again on remand.

■ The exclusion of this evidence does not present a confrontation problem. The sole use for this evidence would be impeachment of T.W.'s testimony that her relationship with appellant was exclusive. By itself the evidence would not serve to exculpate appellant from the charge of having sexual intercourse with T.W. It does not directly relate to the charge made by a witness against him.

■ The Minnesota Rules of Evidence generally do not permit admission of this type of evidence. Minn.R.Evid. 404(c)(1) (1984) provides that evidence of the victim's previous sexual conduct shall not be admitted where the probative value is not substantially outweighed by its prejudicial nature. If the State meets that test, the evidence is admissible *only* when consent is a defense, or to establish identity by showing the source of the semen, pregnancy, or disease.

None of these circumstances exist in this case, yet appellant argues that the evidence should have been admitted. Appellant cites the Advisory Committee Comment to Rule 404 which indicates that the rule was intended to continue to allow the accused the traditional right of impeachment "if the victim's direct testimony specifically concerns the victim's previous sexual activity or lack of it." Minn.R.Evid. 404 Advisory Committee Comment. The statute in effect prior to adoption of the rule specifically permitted evidence of past sexual conduct for purposes of impeachment. Minn. Stat. § 609.347, subd. 3(d) (Supp.1975). The rule does not retain that language.

While the evidence appears to have some impeachment value, it does not fit into the Rule 404 exceptions. Even if it did, T.W. did not, at trial, testify that she never had any other sexual intercourse. The impeachment value, if any, is questionable.

## V.

*Cautionary instruction*

Appellant argues that the trial court should have given a specific cautionary instruction so the jury would not have convicted him on the basis of his AWOL status. Appellant analogizes to cautionary instructions given when evidence of other crimes is admitted, *Spriegl* evidence. Appellant himself admitted his AWOL status on direct examination. The State merely reviewed the same testimony on cross-examination.

Because we are remanding this case, we do not decide whether or not the trial court erred. We note that, should the issue arise at the second trial, jury instructions are best left to the trial court's discretion, depending on the evidence presented at that trial.

## DECISION

Prejudicial error occurred when portions of appellant's statement that were to be blacked out were not blacked out before given to the jury as evidence. The statement taken by police should not have been admitted into evidence.

Reversed and remanded.