STATE of Minnesota, CITY OF MINNEAPOLIS, Respondent,

v.

Rebecca LYNCH, Appellant.

No. C3–85–2165.

Court of Appeals of Minnesota.

Sept. 2, 1986.

Hubert H. Humphrey, III, Atty. Gen., Robert J. Alfton, Minneapolis City Atty., Edward C. Vavreck, C. Lynne Fundingsland, Asst. Minneapolis City Attys., Minneapolis, for respondent.

Stephen C. Fiebiger, Gary M. Rankila, Minneapolis, for appellant.

Heard, considered, and decided by PARKER, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

Rebecca Lynch appeals from convictions of disorderly conduct and interfering with a police officer, contending she was arrested and prosecuted in derogation of her First Amendment rights. She also claims the trial court erred in denying her motions to dismiss the charges and to compel discovery of Minneapolis Police Department Internal Affairs Division files. We affirm in part and remand.

## FACTS

At about 9:00 p.m. on September 3, 1985 members of the Minneapolis Police Department's "decoy unit" were on undercover

patrol in North Minneapolis. Sergeant Ronald Ottoson and Officers Diaz and Thomas observed a young black male driving a scooter at a high rate of speed. The officers followed as the driver "rolled" through a stop sign, turned, and then pulled over to the curb in front of appellant's residence at 1352 Thomas Avenue North.

The policemen parked behind the stopped scooter. Ottoson got out, identified himself as a police officer, and asked the driver for his license. The driver of the scooter, Maurice Woods, did not have a required motorcycle endorsement on his license. The officers arrested Woods and placed him against their car to search him for weapons.

Appellant's son, Kevin Lynch, was standing on the boulevard and witnessed Wood's arrest. Ottoson showed Kevin Lynch his police I.D. and told him the officers were with the decoy unit. A friend of Lynch's then ran into appellant's house and told her of Woods' arrest. Woods is appellant's nephew.

Ottoson said a group of ten to fifteen people, both adults and teenagers, came out of appellant's house and moved towards the boulevard. Appellant made no inquiry into the reasons for Woods' arrest, but instead

> immediately started swearing at us. Her immediate term was motherfucker and then [she] called us motherfucking pigs and stated that we had no business stopping this person for no reason at all and that the only reason we were stopping him is because he was black * * *.

Ottoson said appellant continued swearing and the crowd grew to "50 or 100 people or better." People were soon standing on all four corners of the intersection. Ottoson described the crowd's reaction to appellant's speech:

> Her type of behavior was very excitable to the crowd and rather than having a calming effect, I felt that it had the effect of inciting the crowd. Also the

yelling like this tended to draw more people to the scene.

Officer Diaz also said the crowd appeared to be getting excited and angry; some people were carrying clubs, others were swearing at the police. Ottoson called for backup; more plain clothes officers and a number of uniformed officers soon arrived.

After the backup arrived, Ottoson, another plain clothes officer, and a uniformed officer went into the crowd to arrest appellant. According to Ottoson, appellant began to struggle when informed she was under arrest:

> As I attempted to place my grip upon her upper arm she immediately began to attempt to fight * * *. She struck out with her hand and struck [Officer Hannan] in the face. And we struggled with her and finally she was handcuffed.

Appellant was charged with interfering with a police officer, Minn.Stat. § 609.50 (1984); disorderly conduct, and simple assault; Minneapolis City Code §§ 385.190(b) (1976) and 385.90 (1981).

On October 16, 1985 appellant moved to dismiss the charges on the grounds that her arrest denied her freedom of speech and freedom of association as guaranteed by the First and Fourteenth Amendments of the Constitution. That motion was denied by a Special Term court on October 21, 1985.

On November 6, 1985, one day before her trial, appellant served the Internal Affairs Division of the Minneapolis Police Department with a subpoena duces tecum for:

> all records, files and information on any complaints or investigations on: Sgt. Ottoson, Officers Diaz, Hannan, Schoeben, Jackson, Adams, Thomas and Dee.

When the files were not produced, appellant sought an order compelling discovery. In an accompanying memorandum, appellant argued that the requested documents contained information relevant to the officer's credibility, evidence of "aggressive character," and the names of witnesses who could offer opinion or reputation evidence about the officers.

The state moved to quash the subpoena as untimely and overbroad, arguing that it should have been limited to Officer Hannan since he was the victim of the alleged assault. The trial court agreed:

> It's clear that the Court should not grant any orders in connection with any fishing expeditions, and this is clearly a fishing expedition. There is no attempt to limit the information required to specific information that would be admissible at trial or that would lead to evidence that would be admissible at trial.
>
> \* \* \* \* \* \*
>
> Also it would seem to be extremely untimely to bring such a motion on the date of the trial. Counsel has had adequate time prior to the date of the trial to make such a motion and also to limit the motion to more specific information \* \* \*.

Appellant again moved to dismiss the charges on constitutional grounds. The trial court treated the motion as a challenge to its personal jurisdiction and dismissed that motion solely because appellant had not requested a written complaint. *See* Minn.R.Crim.P. 4.02, subd. 5(3) and 10.02 (1986).

The jury found appellant guilty of disorderly conduct and interfering with a police officer, but not guilty of simple assault. The trial court merged the two convictions under Minn.Stat. § 609.035 (1984) and sentenced appellant to a stayed term of 60 days and a fine of $110.

## ISSUES

1. Is the Minneapolis disorderly conduct ordinance unconstitutionally vague or overbroad?

2. Did appellant's language constitute "fighting words" or was it protected speech under the First Amendment?

3. Were appellant's First Amendment rights to freedom of assembly and association violated by her arrest and prosecution?

4. Did the trial court err in denying appellant's motion to dismiss the charges because she did not request a written complaint?

5. Did the trial court properly deny appellant's motion to compel discovery of Minneapolis Police Department Internal Affairs Division files?

## ANALYSIS

### I.

■ Appellant first contends that the Minneapolis disorderly conduct ordinance is unconstitutionally vague and overbroad.[1] The ordinance provides that:

> No person, in any public or private place, shall engage in, or prepare, attempt, offer or threaten to engage in, or assist or conspire with another to engage in, or congregate because of, any riot, fight, brawl, tumultuous conduct, act of violence, *or any other conduct which disturbs the peace and quiet of another* save for participating in a recognized athletic contest.

Minneapolis City Code § 385.90 (1981) (emphasis added).

The supreme court has held that this language is not unconstitutionally vague. *See State v. Johnson,* 282 Minn. 153, 159, 163 N.W.2d 750, 753–54 (1968). That case involved the former Minneapolis breach of the peace ordinance, Minneapolis Code of Ordinances § 870.060, which was identical to the present disorderly conduct ordinance. *See id.* at 158, 163 N.W.2d at 753 and n. 1. We conclude that *Johnson* is controlling; Minneapolis City Code § 385.-90 is not unconstitutionally vague.

Appellant also argues the ordinance is overbroad. A law is overbroad if it deters the exercise of First Amendment rights by unnecessarily punishing constitutionally protected along with unprotected activity. *See Matter of the Welfare of S.L.J.,* 263 N.W.2d 412, 417 (Minn.1978). Where a law is facially overbroad because it might restrict protected speech, it must be con-

---

1. We note that appellant was also convicted of interfering with a police officer under Minn. Stat. § 609.50 (1984), but has not challenged the constitutionality of that statute.

strued narrowly in order to survive a constitutional challenge. *See Lewis v. City of New Orleans,* 415 U.S. 130, 133, 94 S.Ct. 970, 972, 39 L.Ed.2d 214 (1974); *Gooding v. Wilson,* 405 U.S. 518, 521–22, 92 S.Ct. 1103, 1105–06, 31 L.Ed.2d 408 (1972); *State v. Hipp,* 298 Minn. 81, 87, 213 N.W.2d 610, 614 (1973).

In *S.L.J.* the supreme court held the Minnesota disorderly conduct statute, Minn. Stat. § 609.72, was overbroad, but saved that statute by giving it a narrow construction:

> Although § 609.72, subd. 1(3), clearly contemplates punishment for speech that is protected under the First and Fourteenth Amendments, we can uphold its constitutionality by construing it narrowly to refer only to "fighting words."

*Id.* at 419. The court noted that other disorderly conduct and breach of the peace statutes should be similarly construed to punish only "fighting words." 263 N.W.2d at 419, n. 6.

We therefore construe the language of Minneapolis City Code § 385.90 to refer only to "fighting words." As so limited, that ordinance is not unconstitutionally overbroad.

## II.

█ The issue then becomes whether appellant's denunciation of police officers as "motherfucking pigs" constituted "fighting words."[2] Our supreme court has adopted the definition of "fighting words" established by the United States Supreme Court:

> The real test is whether, under the facts and circumstances of this case, appellant's mere utterance of these vulgar, offensive, insulting words would " 'tend to incite an immediate breach of the peace,' " *Lewis v. City of New Orleans,* 415 U.S. 130, 132, 94 S.Ct. 970, 972, 39 L.Ed.2d 214, 218; are "inherently likely

to provoke violent reaction," *Cohen v. California,* 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284, 291; or "hav[e] an immediate tendency to provoke retaliatory violence or tumultuous conduct by those to whom such words are addressed," *State v. Hipp,* 298 Minn. 81, 87, 213 N.W.2d 610, 614. The specific facts of the case are also important because, as in *Lewis,* whether words are "fighting words" depends on the circumstances surrounding their utterance.

*S.L.J.,* 263 N.W.2d at 419. In *S.L.J.* the court concluded that a juvenile saying "fuck you pigs" to two police officers did not meet this standard:

> While it is true that no ordered society would condone the vulgar language used by this 14–year–old child, and as the court found, her words were intended to, and did, arouse resentment in the officers, the constitution requires more before a person can be convicted for mere speech. In this case, the words were directed at two police officers sitting in their squad car from a distance of 15 to 30 feet by a small, 14–year–old child who was on her way home when she turned to the officers and made her statement. With the words spoken in retreat from more than 15 feet away rather than eye-to-eye, there was no reasonable likelihood that they would tend to incite an immediate breach of the peace or to provoke violent reaction by an ordinary, reasonable person.

*Id.* at 420.

Here appellant used similarly vulgar language. However, in this case there was the additional factor of the crowd drawn by the confrontation between appellant and the police. Several persons in the crowd were brandishing clubs, and the officers testified that appellant's language had the

---

**2.** Citizens have frequently been prosecuted for swearing at police officers. The United States Supreme Court has generally remanded such cases to state courts for reconsideration under the "fighting words" doctrine. *See e.g. Gooding,* 405 U.S. at 519–20, n. 1, 92 S.Ct. at 1104–05 n. 1 ("white son of a bitch, I'll kill you"); *Lewis,* 415

U.S. at 131, n. 1 ("you god damn m.f. police"); *see also* L. Tribe, American Constitutional Law, § 12–10, pp. 617–23 and cases cited at n. 5; *but see Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (upholding conviction where defendant called city marshall a "damned facist" and "god damned racketeer").

effect of inciting that crowd. Additional officers had to be summoned to protect those already present and effect appellant's arrest. The jury, which was properly instructed on the definition of "fighting words," concluded that appellant was guilty of disorderly conduct and interfering with a police officer. Under these facts and circumstances, the evidence is sufficient to support the jury's finding.

## III.

■ The Minneapolis disorderly conduct ordinance does not deprive appellant or her neighbors of their First Amendment rights to freedom of assembly and association. The facts here are not analogous to the freedom of assembly cases, which deal with picketing, organized demonstrations, and protests. *See e.g. Coates v. City of Cincinnati,* 402 U.S. 611, 615, 91 S.Ct. 1686, 1689, 29 L.Ed.2d 214 (1971) and cases cited therein. Appellant was charged with disorderly conduct for verbally abusing police officers, not for conducting an unlawful assembly. Appellant's claimed freedom of assembly rights cannot legitimize language which we have already determined was not protected by her right to freedom of speech.

## IV.

■ The trial court erred in denying appellant's motion to dismiss the charges solely because she had not requested a written complaint. A defendant may always move the court to dismiss a tab charge on the grounds that the "law defining the offense charged is unconstitutional or otherwise invalid." Minn.R.Crim.P. 17.-06, subd. 2(2)(c) (1986) However, that error was harmless because all of appellant's constitutional arguments were preserved for appeal. *See* Minn.R.Crim.P. 17.06, subd. 4(1) (1986).

## V.

■ Appellant brought a motion to compel discovery of all Minneapolis Police De-

partment Internal Affairs Division files on eight officers. The trial court denied that motion as untimely and because the request was a "fishing expedition." Appellant contends the trial court erred because the credibility of the arresting officers was the critical issue at trial and the requested information was essential for proper impeachment.[3]

Discovery in misdemeanor cases is governed by Minn.R.Crim.P. 7.03, which allows defense counsel to inspect police investigatory reports. Other discovery may be conducted under Rule 9 by consent of the parties or by motion to the court. *See State v. Hopperstad,* 367 N.W.2d 546, 548 (Minn.Ct.App.1985).

In *Hopperstad* this court dealt with a similar issue, but in a slightly different factual context. The defendant there was charged with disorderly conduct following a scuffle at the police station. He claimed he was injured when he was maced during the struggle. A police captain conducted an internal investigation in anticipation of a civil suit. On the morning of his trial, the defendant served a subpoena duces tecum and demanded two tape recorded statements he had made to police and the internal investigation file. The defendant's statements were produced, but the prosecutor objected to turning over the investigation file. Without inspecting that file, the trial court denied the discovery motion. *See Id.* at 547–48.

On appeal, this court concluded the internal investigation file was protected by the Data Practices Act, subject to the defendant's right "to obtain anything exculpatory or any statements of witnesses." *Id.* at 549. The trial court's ruling was reversed; the case remanded for a new trial; and the court instructed to review the file in camera to determine:

> whether material exists which tends to negate evidence of defendant's guilt. If, in the trial court's discretion, the defendant's needs outweigh the need for confi-

---

**3.** Appellant also contends that information in the files was relevant to her claim of self-de-

fense. That issue is now moot because she was acquitted of assault.

dentiality of the reports, those portions of the file should lose their protection. The trial court cannot rule that the entire file is protected without first reviewing it.

*Id.*

Here appellant sought discovery of all "records, files, and information" on eight police officers. Under the Data Practices Act, most of that information is "private data" because at least six of those eight officers are members of an undercover unit. *See* Minn.Stat. § 13.43, subd. 5 (1984). Private data is discoverable only upon court order. *See* Minn.Stat. § 13.03, subd. 6 (1984). Other information may be public data. *See* Minn.Stat. § 13.43, subd. 2 (1984). Public data is accessible under Minn.Stat. § 13.03 (1984).

We agree with the trial court that appellant's subpoena was overly broad and poorly timed. Appellant sought much more than a single file directly related to the very incident which led to criminal charges against her. *Contra Hopperstad*, 367 N.W.2d at 548. Nevertheless, a defendant's right to confront her accusers mandates that a trial court review subpoenaed materials and determine if they contain exculpatory information and to grant a new trial if appropriate. *See id.* at 549; *see also Syrovatka v. State*, 278 N.W.2d 558, 562 (Minn.1979) (remanding for in camera review); *State v. Kutchara*, 350 N.W.2d 924, 926 (Minn.1984). Such a determination is also proper procedure under the Data Practices Act. *See* Minn.Stat. § 13.03, subd. 6 (1984). The trial court erred by not conducting an in camera review.

However, under the circumstances of this case, we cannot determine whether appellant is entitled to a new trial. In *Hopperstad* the existence of a relevant investigative report was apparent. 367 N.W.2d at 548. Here there is no evidence in the record that any exculpatory material exists. If there is none, there is no prejudice.

We therefore remand this case for a determination by the trial court of whether any of the subpoenaed information tends to negate evidence of appellant's guilt. If any exculpatory material is also private data, the trial court has discretion to weigh appellant's need for that material against the need for confidentiality. *See Hopperstad* at 549. Appellant is entitled to all public data as defined by Minn.Stat. § 13.-43, subd. 2. If exculpatory material exists, the court must determine whether there is a reasonable probability that the material is necessary for a fair trial. *See Syrovatka* at 562. If so, appellant is entitled to a new trial. *Id.* If not, the motion for a new trial should be denied.

## DECISION

The Minneapolis disorderly conduct statute is neither vague nor overbroad as narrowly construed to punish only "fighting words." Under the facts and circumstances of this case, appellant's speech constituted "fighting words" and her prosecution did not deny her the right to freedom of assembly. The trial court's denial of appellant's motion to dismiss the charges was harmless error where all constitutional issues were preserved on appeal. The trial court erred in not reviewing subpoenaed documents and this case is remanded for further proceedings in accord with this opinion.

Affirmed in part and remanded in part.