**In the Matter of the WELFARE OF T.L.S.**

No. A05–861.

Court of Appeals of Minnesota.

May 9, 2006.

878

Mike Hatch, Attorney General, St. Paul, MN and Susan Gaertner, Ramsey County Attorney, Darrell C. Hill, Assistant County Attorney, St. Paul, MN, for respondent.

John M. Stuart, State Public Defender, Bridget Kearns Sabo, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by RANDALL, Presiding Judge; MINGE, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

In this appeal from an adjudication of delinquency on one count of possession of a dangerous weapon, appellant T.L.S. contends that the district court erroneously denied her motion to suppress the knife that officers found when they searched her purse. T.L.S. maintains that because the arresting officers lacked probable cause to arrest her, and because the offenses for which they might have had probable cause do not permit a custodial arrest, the search violated her constitutional rights. We affirm.

## FACTS

Two St. Paul police officers responded to a call from Area Learning Center (ALC) about a former student who was acting disorderly and refusing to leave the school building. That former student, appellant T.L.S., went to ALC seeking readmission, and a school administrator told her that she had been transferred to another school. T.L.S. became upset and began yelling. A school administrator asked T.L.S. to leave, but she refused. The administrator warned T.L.S. that if she did not leave, he would call the police. T.L.S. still refused.

When uniformed police officers arrived, the school administrator directed them to T.L.S. They found her in the school administrative office. T.L.S. responded to the officers by declaring that she was not going to leave. An officer ordered T.L.S. to leave the building and warned that if she refused, she would be taken into custody and delivered to the truancy center. T.L.S. said that she wanted to call her mother. She ignored the instruction to leave and picked up a telephone. One of the officers took the telephone from T.L.S., and T.L.S. began shouting profanities. As the district court would later find, T.L.S. "was shrieking at the officer," and the noise was "disruptive to the running of the school and purposes of the school." T.L.S. continued to refuse to leave, so the officers seized her and escorted her from the building.

T.L.S.'s "loud shrieking" continued, and she shouted profanities at the officers as they removed her. Outside, the officers tried unsuccessfully to calm her. T.L.S.'s hostility continued, and the officers handcuffed her. T.L.S. refused to identify herself upon the officers' request, shouting, "You dumb mother f——ing b——h ass cop you figure it out since you know every f——ing thing!" The officers placed T.L.S. in a patrol car, searched her purse, and found a seven-inch steak knife.

The state filed a juvenile-delinquency petition charging T.L.S. with possession of a dangerous weapon on school property, in violation of Minn.Stat. § 609.66, subd. 1d(a) (2004), and disorderly conduct, in violation of Minn.Stat. § 609.72, subd. 1(3) (2004). T.L.S. moved to suppress admission of the knife, but the district court denied the motion. The state and T.L.S. agreed to submit the case to the court for a decision on the merits based on the testimony presented at the suppression hearing and on the documentary record. The district court found T.L.S. delinquent for possession of a dangerous weapon on school property, acquitted her of the disorderly conduct charge, and placed her on supervised probation. This appeal follows.

## ISSUE

Did the district court err by denying T.L.S.'s motion to suppress evidence seized during a search incident to arrest for disorderly conduct, when probable cause for the misdemeanor violation is based on the manner of delivering constitutionally protected speech, and on an uncharged trespassing violation?

## ANALYSIS

■ T.L.S. argues that the search of her purse was constitutionally infirm and, therefore, that the district court erred by denying her motion to suppress. *See Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963) (explaining that "evidence seized during an unlawful search [can]not constitute proof against the victim of the search"); *State v. Harris,* 590 N.W.2d 90, 97 (Minn.1999). When the facts underlying a pretrial motion to suppress are undisputed, this court independently reviews the record to determine, as a matter of law, whether the district court erred by denying the motion. *State v. Othoudt,* 482 N.W.2d 218, 221 (Minn.1992). A determination of "probable cause as it relates to warrantless searches" is also subject to *de novo* review. *In re Welfare of G.M.,* 560 N.W.2d 687, 690 (Minn.1997).

■ The federal and state constitutions prohibit unreasonable searches and seizures. U.S. Const. Amend. IV; Minn. Const. art I, § 10. Under both constitutions, a warrantless search is unreasonable unless it fits within one of the narrow exceptions to the warrant requirement. *State v. Dickerson,* 481 N.W.2d 840, 843 (Minn.1992), *aff'd* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). A search incident to an arrest is an exception to the warrant requirement. *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973). If a police officer has probable cause to arrest, the officer may search an arrested person for weapons or evidence. *State v. Varnado,* 582 N.W.2d 886, 892 (Minn.1998). Probable cause to arrest exists when "the objective facts are such that under the circumstances, a person of ordinary care and prudence would entertain an honest and strong suspicion that a crime has been committed." *G.M.,* 560 N.W.2d at 695. We first determine whether the officers

had probable cause to believe T.L.S. engaged in disorderly conduct in violation of Minnesota Statutes § 609.72.

T.L.S. argues that the officers did not have probable cause to arrest her for disorderly conduct because swearing at police officers cannot alone constitute disorderly conduct, relying on *In re S.L.J.,* 263 N.W.2d 412 (Minn.1978). She misreads *S.L.J.* In *S.L.J.,* the supreme court held that the prohibition of "offensive, obscene, or abusive language" in the disorderly conduct statute violates the First Amendment, and it construed the provision to proscribe "only ... the use of 'fighting words.'" *Id.* at 418–19. The statute does not limit disorderly conduct to fighting words; it also includes "abusive, boisterous, or noisy conduct." Minn.Stat. § 609.72, subd. 1(3) (2004). So in light of the holding of *S.L.J.,* it is certain that T.L.S.'s words alone did not constitute disorderly conduct based on their content, despite their rude and offensive nature. But the *S.L.J.* court addressed only that portion of the statute that criminalized "offensive, obscene, or abusive language." *Id.* In construing the statute to limit speech-based disorderly conduct to fighting words, the *S.L.J.* court did not address, and therefore did not except, boisterous and noisy conduct from legislative prohibition.

■ More precisely, by its explanation of *City of St. Paul v. Mulnix,* 304 Minn. 456, 232 N.W.2d 206 (1975), the *S.L.J.* court expressly noted that it did not intend to deem unconstitutional the anti-noise provisions of disorderly conduct legislation. *S.L.J.,* 263 N.W.2d at 419 n. 6. In *Mulnix,* the supreme court affirmed the conviction of a defendant charged under a city ordinance that prohibited disorderly conduct. 304 Minn. at 459–60, 232 N.W.2d at 207–08. The charged conduct included "shouting and screaming" profanities. *Id.* at 460, 232 N.W.2d at 208. The *S.L.J.* court high-

lighted that the *Mulnix* decision remains precedential because it involved "disorderly *conduct* which would have been sufficient to warrant a conviction without the addition of the offensive speech." *S.L.J.*, 263 N.W.2d at 419 n. 6. Although the disorderly conduct statute prohibits only "fighting words" as applied to speech *content*, the disorderly shouting of otherwise protected speech or engaging in other "boisterous or noisy *conduct*" may still trigger punishment under the statute without offending the First Amendment. In that circumstance, it is not the speech itself that triggers punishment; the statute may be applied to punish the manner of delivery of speech when the disorderly nature of the speech does not depend on its content. We therefore consider whether T.L.S.'s conduct would support probable cause in this framework.

 The district court found that T.L.S. was disrupting the school by "shrieking" profanities inside the school administration office. While her language does not constitute fighting words and therefore would not support probable cause for content-based disorderly conduct, the objective facts would lead a person of ordinary care to an honest and strong suspicion that T.L.S. was engaging in boisterous and noisy conduct in violation of the statute. We therefore conclude that the officers had probable cause to arrest T.L.S. for disorderly conduct.

 The district court noted that the officers were also aware that T.L.S. had continued to refuse to leave the school despite having been told to leave by individuals with authority to evict her. Under these circumstances, a person of ordinary care and prudence also would strongly suspect that T.L.S. was trespassing on school property. *See* Minn.Stat. § 609.605, subd. 4(a)—(d) (2004) (defining trespass on school property). We agree with the dis-

trict court that the police had probable cause to arrest T.L.S. for trespassing.

That T.L.S. was not charged with trespass and was found not guilty on the disorderly conduct charge does not vary our assessment. *See City of St. Paul v. Johnson*, 288 Minn. 519, 523, 179 N.W.2d 317, 320 (1970) (noting that the ultimate charge and outcome of prosecution "is of no consequence" to a determination of probable cause to arrest); *State v. Bauman*, 586 N.W.2d 416, 421 (Minn.App.1998) (noting that a person need not be previously or subsequently arrested for the offense giving rise to the search because "[t]he focus is not on the arrest, but on whether probable cause to arrest exists before a search"), *review denied* (Minn. Jan. 27, 1999). The district court indicated accurately that denying T.L.S.'s motion did not require it to determine beyond a reasonable doubt that T.L.S. actually violated either law. Neither the prosecution decision nor the court's acquittal here affects our holding that the officers had probable cause to arrest.

 T.L.S. also argues that even if the police had probable cause to arrest, the custodial arrest and subsequent search are invalid because the possible offenses for which they might have had probable cause were misdemeanors. *See Varnado*, 582 N.W.2d at 892 (noting that a search incident to arrest is valid only if the crime is one for which a custodial arrest is authorized). Trespass on school property and disorderly conduct are indeed both misdemeanor offenses. Minn.Stat. §§ 609.605, subd. 4, 609.72, subd. 1. But an officer may make a custodial arrest for a misdemeanor offense if "it reasonably appears to the officer that the arrest or detention is necessary to prevent ... further criminal conduct, or that there is a substantial likelihood that the accused will fail to respond to a citation." Minn. R.Crim. P. 6.01,

subd. 1(1)(a); *See Varnado,* 582 N.W.2d at 892. The arresting officers' search incident to arrest here is therefore valid if they reasonably and substantially doubted that a citation would cause T.L.S. to stop violating the law.

The record suggests no basis for the officers to believe a citation would have led T.L.S. to yield. T.L.S. received no fewer than four demands to leave the school—each escalating in authoritative force—yet she refused. School administrators asked her to leave. Then they ordered her to leave, threatening that they would summon the police. Police officers arrived in full uniform and ordered T.L.S. to leave. Finally, officers warned that unless T.L.S. would voluntarily leave the school, they would take her into custody. None of this moved her. Witnessing firsthand T.L.S.'s obstinate defiance to lawful demands in the face of credible warnings of serious consequences, the officers had no reason to expect that a written citation would precipitate her compliance. We conclude that the officers' custodial arrest was appropriate.

### DECISION

Because the officers observed T.L.S. engage in conduct that violated the statutory prohibition against disorderly conduct and trespassing, the officers had probable cause to arrest her. The content-based constitutional protection of speech does not render the district court's probable-cause determination erroneous because the conduct supported an alternative basis for a disorderly conduct violation. Because the officers could not reasonably expect T.L.S. to respond to a citation, the officers' decision to arrest T.L.S. was valid. The district court did not err by denying T.L.S.'s motion to suppress evidence that the officers recovered in a search incident to that valid arrest.

**Affirmed.**