**STATE of Minnesota, Respondent,**

v.

**Isaac Siegel PETER, Appellant,**

**Michael Christopher Lawson, Appellant.**

**No. A10–1263.**

Court of Appeals of Minnesota.

May 3, 2011.

---

Lori Swanson, Attorney General, St. Paul, MN; and Jennifer Ardyn Saunders, Office of the City Attorney, Minneapolis, MN, for respondent.

Jordan S. Kushner, Law Office of Jordan S. Kushner, Minneapolis, MN, for appellants.

Considered and decided by KLAPHAKE, Presiding Judge; MINGE, Judge; and HARTEN, Judge.

## OPINION

KLAPHAKE, Judge.

Appellants were charged with disorderly conduct in violation of Minneapolis, Minn. Code of Ordinances § 385.90 (1991) (disorderly conduct ordinance), for protesting outside Ribnick Furs and Leather (Ribnick Fur) in downtown Minneapolis. They appeal from their convictions following a joint jury trial. Because the evidence was insufficient to convict appellants of disorderly conduct, when their statements and conduct did not rise to the level of "fighting words," and their loud chanting and yelling were "inextricably intertwined" with their political protest, which was protected by the First Amendment, we reverse the convictions.

## FACTS

On March 4, 2010, at approximately 4:30 p.m., 19–year–old Isaac Siegel Peter and 21–year–old Michael Christopher Lawson were conducting an animal rights protest outside Ribnick Fur. Peter estimated that he had protested at Ribnick Fur approximately 20 to 30 times before and that his manner of protesting always involved chanting, carrying signs or banners, and trying to talk to people. Lawson testified that he had protested at Ribnick Fur with Peter approximately six to eight times and that he was not doing anything differently than at previous protests. Both men testified that they were chanting loudly, but not shrieking, that they were using their natural voices with no sound amplification equipment, and that they did not strain their voices. Peter testified that police had been called to each of his protests, but he had never been arrested.

The owner and president of Ribnick Fur, William Ribnick, testified that he calls police every time there are protesters at his store, which occurs about six times a year. He stated that through the closed store window he could see appellants walking back and forth, looking in the window, and screaming. Ribnick testified that appellants were "very loud and very angry" and that they yelled on and off for about a half hour until police arrived. He also testified that appellants spoke about the business, fur, and killing animals, but that they also yelled that they knew where he lived; they knew where his elderly mother lived; and they knew his vehicle license plate number.

Ribnick agreed that appellants did not enter the store, open the door, or even touch the window. He further agreed that appellants did not stop any customers from entering the store that day. Ribnick conceded that appellants never threatened him with any physical harm or damage to the property.

The testimony of two Ribnick Fur employees tended to corroborate Ribnick's testimony that appellants were yelling loudly from outside the store through the closed window, that they were chanting and shouting about the fur industry and killing animals, but that they never threatened any physical harm to persons or property. An employee of a neighboring business testified that appellants were

loud, that their "tone was very aggressive and angry," that their yelling "got under my nerves," and that they disrupted his work with the noise.

Two Minneapolis police officers responded to the emergency call that day. One officer testified that he could hear appellants yelling when he was approximately one-half block away from the store and that they stopped yelling when they saw his squad car approaching. The officer acknowledged that he initially did not believe he had grounds to arrest appellants based solely on his conversation with Ribnick. But after the neighboring employee opened his window and yelled that he wanted police to arrest appellants, the officer spoke to several other individuals across the street, who claimed that appellants were harassing customers. The officers then decided to charge appellants with disorderly conduct.

At the close of the state's case and again at the close of their case, appellants moved for acquittal, claiming that their conduct was protected by the First Amendment and that none of their statements rose to the level of fighting words. The district court denied the motions, concluding that the state's case was based on the manner in which appellants were protesting, not on the content of the language itself. The court also denied appellants' motion to have the Minneapolis disorderly conduct ordinance declared unconstitutional on its face and as applied to them, concluding that the motion was untimely and that the constitutionality of the ordinance has been upheld in several appellate decisions.

The jury found both appellants guilty of disorderly conduct. The district court stayed imposition of appellants' sentences, and this joint appeal followed.

## ISSUES

1. Was the evidence sufficient to support appellants' convictions under the constitutionally narrowed construction of the Minneapolis disorderly conduct ordinance?

2. Is the Minneapolis disorderly conduct ordinance unconstitutionally overbroad and vague?

## ANALYSIS

### I.

■ Appellants argue that the evidence is insufficient to support their convictions because their conduct was protected free speech, their statements did not constitute fighting words, and their expressive activity was inextricably linked to their protected message. At trial, the state generally agreed that appellants' speech did not constitute fighting words, but argued that their loud yelling and some of their statements (that they knew where Ribnick and his mother lived and that they knew his vehicle license plate number) could be separated from the protected speech and prosecuted under the disorderly conduct ordinance. Under the narrow construction that we must give to the ordinance, however, we do not believe that appellants' conduct in yelling and directing some statements to individuals can be separated from their protected speech, particularly in this case involving political protest.

■ When protected free speech is involved, the offense of disorderly conduct has been interpreted narrowly and as restricting only "fighting words." *State, City of Minneapolis v. Lynch,* 392 N.W.2d 700, 703–04 (Minn.App.1986) (citing *State v. Johnson,* 282 Minn. 153, 159, 163 N.W.2d 750, 754 (1968)). In *Lynch,* the defendant was convicted of disorderly conduct under the Minneapolis ordinance, for denouncing police officers as "motherf* * *king pigs." 392 N.W.2d at 702. This court upheld the conviction because

the jury had been properly instructed on the definition of "fighting words," and the defendant's language had the effect of inciting a crowd of people that had gathered, some of whom were brandishing clubs. *Id.* at 704.

Minnesota courts have reversed disorderly conduct convictions based on offensive language that did not constitute fighting words. In *In re Welfare of S.L.J.,* 263 N.W.2d 412, 419–20 (Minn.1978), the supreme court held that a retreating 14–year–old girl's statement to police, "f* *k you pigs," did not constitute fighting words because she directed it at two police officers sitting in a squad car located 15 to 30 feet away. The court noted that there was no reasonable likelihood that the statements would "tend to incite an immediate breach of the peace or to provoke violent reaction by an ordinary reasonable person." *Id.* Recent cases have struck down disorderly conduct adjudications of juveniles yelling hostile, vulgar, obscene, or provocative language, when their statements did not constitute fighting words because they were unlikely to provoke retaliatory violence or incite imminent lawless action. *See, e.g., In re Welfare of W.A.H.,* 642 N.W.2d 41, 43, 47 (Minn.App. 2002); *In re Welfare of M.A.H.,* 572 N.W.2d 752, 756–60 (Minn.App.1997).

None of the cases discussed above sustaining convictions involved political protest or speech on matters of "public concern." *See Snyder v. Phelps,* — U.S. —, 131 S.Ct. 1207, 1211, 179 L.Ed.2d 172 (2011). Speech on matters of "public concern" is "at the heart of the First Amendment's protection" and is "entitled to special protection." *Id.* (quotations omitted). The content of speech may relate to "broad issues of interest to society at large," even if some of the speech or messages relate to private individuals. *Id.* at 1216. In *Snyder,* the United States Su-

preme Court upheld the defendants' First Amendment right to hold an anti-gay demonstration near a service member's funeral, even though the demonstration was offensive. *Id.* at 1219. The Court reiterated, however, that even protected speech is not permissible in all places and at all times, and that it is subject to "reasonable time, place, or manner restrictions." *Id.* at 1218.

Public protest cases generally include not only speech, but some type of expressive conduct. In *State v. Machholz,* 574 N.W.2d 415, 417–18 (Minn.1998), the Minnesota Supreme Court held that the criminal harassment statute, as applied to the defendant, was unconstitutional. *Machholz* involved a defendant riding a horse through a gay pride gathering, swinging a rope, and yelling hateful comments at the crowd. *Id.* The court reversed the harassment conviction, holding that the words used by the defendant were "inextricably linked to the conduct of riding his horse through the crowd." *Id.* at 421. The court concluded that while the defendant's statements were offensive and obnoxious, they did not constitute fighting words; the court also concluded that the harassment statute, as applied to the defendant, was overbroad. *Id.* at 421–22.

In another public protest case, *Baribeau v. City of Minneapolis,* 596 F.3d 465, 478 (8th Cir.2010), the issue was whether police had probable cause to arrest a number of individuals dressed as zombies who were protesting consumerism in downtown Minneapolis. The protesters played amplified music, broadcast announcements, came within three feet of bystanders, and frightened at least one child. *Id.* at 471. Based on its analysis of *Machholz* and other Minnesota cases, the Eighth Circuit concluded that the *Baribeau* protesters were engaged in "protected expressive conduct." *Id.* at 477. The court acknowl-

edged that "in some instances, it may be possible to separate a speaker's protected speech and expressive conduct from his unprotected, non-expressive conduct," but that under the facts of *Baribeau*, the protesters' anti-consumerism message was "inextricably linked" to their expressive conduct. *Id.* at 477. The court thus concluded that the police lacked probable cause to arrest the protesters for violating the disorderly conduct statute.

In this case, appellants' conduct consisted of holding signs, chanting, and making comments about animal abuse. Even the conduct by appellants that was directed at individuals, consisting of shrieking and yelling through a closed window and stating that they knew where Ribnick and his mother lived and they knew his license plate number, did not constitute fighting words. No reasonable jury could have found that any of appellants' statements constituted fighting words as that phrase has been defined.

■ The other complaint about appellants' conduct involved the manner or the delivery of their speech, in which appellants were so loud and angry that they disturbed and annoyed others. But appellants yelled in their natural voices, without the use of any sound amplification equipment. Their protest occurred on a downtown Minneapolis street, during afternoon rush hour, in a mixed use neighborhood that included businesses, residences, and entertainment establishments. Loud and even boisterous conduct is protected under Minnesota law, when that conduct is "expressive and inextricably linked to [a] protected message." *Id.* at 478.

The state basically relies on one case to support its position that appellants' loud yelling is not protected by the First Amendment, *In re Welfare of T.L.S.*, 713 N.W.2d 877, 879–81 (Minn.App.2006). That case involved a juvenile who was loudly "shrieking," screaming profanities in a school building, and disrupting the running of the school. *Id.* at 879. The conduct in *T.L.S.* was non-expressive conduct unrelated to any substantive message, and it occurred inside a school building while school was in session. *Id.* Appellants assert that regulation of conduct of an unruly student in a school building is not equivalent to restrictions on the manner of political protest on a public sidewalk in a busy urban area, and that the state's reliance on *T.L.S.* is thus misplaced. We agree.

Giving narrow construction to the disorderly conduct ordinance, none of appellants' statements can be construed as fighting words, and appellants' expressive conduct here was inextricably intertwined with their protected speech. Because no jury could reasonably conclude that appellants were guilty of violating the disorderly conduct ordinance, we conclude that the evidence is insufficient to sustain appellants' convictions, and we reverse.

## II.

Appellants also argue that the Minneapolis disorderly conduct ordinance is overly broad and vague on its face as applied to them. The ordinance criminalizes "any conduct which disturbs the peace and quiet of another." Minneapolis, Minn.Code of Ordinances § 385.90. Appellants assert that it is "inconceivable that the ... ordinance can survive *Machholz*," which struck down the harassment statute, Minn.Stat. § 609.749, subd. 2(7) (1996), as overbroad because it encompassed "expressive activity" clearly protected by the First Amendment. *Machholz*, 574 N.W.2d at 420. Appellants reason that the ordinance could be read to prohibit "any sort of protest or demonstration with loud chanting, a musical or artistic street performance, or a

person simply expressing an opinion in an animated manner."

The state responds that appellants' challenge to the constitutionality of the ordinance should not be considered by this court on appeal because it was not timely raised and was not addressed by the district court. Because the district court did not specifically rule on the challenge to the constitutionality of the ordinance and because we have already concluded that the evidence is insufficient to sustain appellants' convictions, we need not address this issue. But we tend to agree with appellants that the ordinance is in danger of being struck down unless it is restricted to prohibiting only fighting words and conduct that is not inextricably linked to protected speech. *See id.; S.L.J.,* 263 N.W.2d 412; *Lynch,* 392 N.W.2d at 703–04.

### DECISION

Minnesota cases have narrowly interpreted the Minneapolis disorderly conduct ordinance as constitutional only if applied to restrict "fighting words." When appellants' speech and inextricably intertwined expressive conduct are considered under that narrow interpretation, we must conclude that the evidence was insufficient to convict appellants of disorderly conduct. We therefore reverse appellants' convictions.

**Reversed.**