[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14270
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-00202-MEF-SRW


DONNA JONES,

                         Plaintiff - Appellant,

versus

GREG WARD,
in his individual and official capacity as Geneva County Sheriff,
FRED HAMIC,
in his individual and official capacity as Probate Judge of Geneva County,
HAZEL ODOM,
in her official capacity as Personnel Director of Geneva County, Alabama,
RAY MINSHEW, in his individual capacity as Geneva County Commissioner,
GENEVA COUNTY COMMISSION, et al.,

                         Defendants - Appellees,

KIRKE ADAMS.
in his individual and official capacity as District Attorney
for the 33rd Judicial Circuit for the State of Alabama, et al.,

                         Defendants.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(March 25, 2013)

Before WILSON, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Donna Jones appeals the district court's Federal Rule of Civil Procedure 12(b)(6) dismissal with prejudice of her claim for malicious prosecution. She also appeals the district court's orders denying her motions for reconsideration and leave to amend her malicious-prosecution complaint. Finally, Jones appeals the district court's grant of summary judgment in favor of the Geneva County Commission (Commission) and Probate Judge Fred Hamic on First Amendment retaliation grounds. For the following reasons, we affirm.

Donna Jones began working for Geneva County, Alabama, in 1979, first as a county probate clerk, then working her way up until her appointment as county administrator by the Commission in 1990. At the beginning of Jones's career, she had a close relationship with her supervisor, Probate Judge Harry Adkinson. The probate judge is also the head of the Commission. In the 2006 election for probate judge, Fred Hamic defeated Adkinson. During the election, Jones was told by a number of people that Hamic planned on firing her if he won, but by all accounts

2

the relationship between Jones and Hamic after his victory was courteous and professional.[1]  In February 2008, Hamic discussed Jones's use of leave time with her.  The gist of the conversation was that he would no longer approve her requests for overtime without first obtaining the Commission's approval.  That same month, Jones submitted her retirement paperwork, although it appears that she never followed through with that plan.  On March 10, 2008, Sherriff Greg Ward attended a Commission meeting to raise concerns he had about Jones's use of overtime.  Waving Jones's time sheets in the air, Ward told the Commission he had begun an investigation into Jones's use of overtime, and planned to turn the results over to the State of Alabama.  Jones, who was present, asked Ward why he would do that.  Ward responded that if he answered the question, he would have to read Jones her rights.

After Ward's speech, the Commission discussed moving the county administrator position from an hourly-wage position to a salary position.  The Commission ultimately voted to end overtime for Jones's position and make her positions, along with three other positions, compensated by salary rather than an hourly wage.  This decision was ultimately affirmed by the Geneva County Personnel Board.  On March 14, 2008, Jones submitted a written grievance to Hamic about the change in her employment status.  On March 27, 2008, Jones was

---

[1] After Hamic was elected probate judge, Jones asked Hamic if he was going to fire her. Hamic told her that as long as she did her work well, she would not be fired.

3

indicted for using her position as county administrator for personal gain by paying herself overtime during periods in which she used sick leave and vacation time. After she posted bond and returned to the office, Hamic fired her. Jones then filed her second grievance with Hamic.

In April 2008, Jones applied for unemployment benefits. The Alabama Department of Industrial Relations (ADIR) concluded that Jones had "been including pay or sick leave in computing overtime hours for which she was paid time and a half," and denied her claim. However, an internal audit by the Alabama Department of Examiners of Public Accounts, which reviewed Jones's time sheets, found only two minor issues with Geneva County's payroll procedures, and found no illegal or improper conduct by Jones. Four months after the audit, Geneva County's district attorney moved to dismiss the criminal charges against Jones. The district attorney determined that the prosecution would consume a disproportionate amount of resources, and offered to dismiss the charges if Jones would repay Geneva County the amount by which she was overpaid. Eventually, the charges were dismissed. On October 27, 2009, the Personnel Board held a hearing on Jones's grievances, ultimately upholding the reclassification of Jones's position from hourly wage to salaried. That decision is on appeal to the Circuit Court of Geneva County.

4

Jones filed her federal lawsuit in March 2010, alleging various retaliatory and discriminatory actions against Ward, Hamic, the Commission, and others. On March 30, 2011, the district court granted Ward's motion to dismiss Jones's malicious prosecution claim against him, finding him qualifiedly immune from suit. After the dismissal, Jones filed a motion to reconsider along with a motion to amend her complaint. The district court denied the motion to reconsider, and denied Jones's motion to amend "to the extent that Jones seeks to reinstate parties and claims that were previously dismissed with prejudice." The rest of Jones's claims were later defeated on summary judgment.

On appeal, Jones challenges (1) the district court's Rule 12(b)(6) dismissal of her malicious prosecution claim; (2) its denial of her motion to amend her complaint; and (3) its grant of summary judgment in favor of the Commission and Hamic. We address each in turn.

We review a court's dismissal under Rule 12(b)(6) de novo. *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir. 2004). In doing so, we must accept the complaint's allegations as true, and construe them in the light most favorable to the plaintiff. *Id.* We will affirm the dismissal if there is no set of facts that would entitle the claimant to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S. Ct. 1937, 1949–50 (2009).

Here, the district court granted Ward's motion to dismiss after finding that he was qualifiedly immune. On appeal, Jones only challenges the dismissal as it relates to Ward's individual capacity, therefore any claims against Ward in his official capacity have been abandoned. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). Jones admits that Ward was acting within the scope of his discretionary authority, so Jones must now show that Ward violated one of her clearly established rights. *See Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009). "This burden is not easily discharged: That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) (emphasis in original) (internal quotation marks omitted). One of the purposes of qualified immunity is to "give[] government officials breathing room to make reasonable but mistaken judgments." *Messerschmidt v. Millender*, __ U.S. __, 132 S. Ct. 1235, 1244 (2012) (internal quotation marks omitted). We must examine the "objective legal reasonableness" of the official's action. *Id.* at 1245 (internal quotation marks omitted).

In order to state a claim for malicious prosecution in Alabama—as well as in the Eleventh Circuit—the plaintiff must establish the following elements: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with

6

malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood v. Kessler*, 323 F.3d 872, 882 (11th Cir. 2003).

We agree with the district court that Ward had probable cause to arrest Jones. Probable cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks omitted). Here, the district court held that "a reasonable officer in possession of those time sheets could have believed that probable cause existed to arrest Jones." Because the time sheets did show some overpayment to Jones, Ward had probable cause to arrest Jones. Although the internal audit did indicate that most of the overpayments were due to nonhuman error, Ward was not privy to that information at the time of the investigation and indictment. Therefore, the allegations in Jones's complaint cannot establish a claim for malicious prosecution, and the district court was correct to grant Ward qualified immunity from suit.

Similarly, we also conclude that the district court did not abuse its discretion in denying Jones's motions to reconsider and amend her complaint. Nothing, not even a creatively amended complaint, could modify the chronological order of

7

events and place the exculpatory internal audit in Ward's hands earlier in time. Therefore, any amendment would have been futile. *See Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (per curiam) ("A proposed amendment may be denied for futility when the complaint as amended would still be properly dismissed." (internal quotation marks omitted)).

Finally, we turn to Jones's argument that the district court erred in granting summary judgment in favor of the Commission and Hamic on Jones's free-speech retaliation claim. To establish a First Amendment retaliation claim, the plaintiff must first show that the First Amendment protects her activity, and then produce sufficient evidence showing that her protected conduct amounted to a motivating factor in the decision to take adverse employment action against her. *See Hatcher v. Bd. of Pub. Educ. & Orphanage for Bibb Cnty.*, 809 F.2d 1546, 1556 (11th Cir. 1987). The essence of Jones's argument is that Hamic fired her because of her association with Hamic's predecessor, Harry Adkinson.

Although Jones is correct that her association with Adkinson is protected under the First Amendment, *see Hatcher*, 809 F.2d at 1558, she presents no evidence that the relationship was a substantial or motivating factor in her termination. This is especially true given that more than a year passed between Hamic's ousting of Adkinson and Jones's termination. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) ("A three to four

8

month disparity between the statutorily protected expression and the adverse employment action is not enough."). As the district court remarked, Hamic, the Commission, and Ward "arguably treated Donna Jones unfairly and undoubtedly could have handled the situation better." Nevertheless, all of the evidence indicates that Jones's termination had everything to do with Ward's investigation and Jones's indictment. Accordingly, we must affirm the district court's grant of summary judgment.

**AFFIRMED**.