*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0104**

State of Minnesota,
Respondent,

vs.

Irene Bernice Benjamin,
Appellant.

**Filed January 17, 2017
Affirmed
Smith, John, Judge**[*]

Mille Lacs County District Court
File No. 48-CR-15-1422

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Joe Walsh, Mille Lacs County Attorney, Kali A. Gardner, Assistant County Attorney, Milaca, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sean M. McGuire, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Hooten, Judge; and Smith,

John, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SMITH, JOHN**, Judge

We affirm Appellant Irene Bernice Benjamin's misdemeanor disorderly conduct conviction because her actions were not protected by the First Amendment and the district court did not commit reversible error when instructing the jury.

## FACTS

Around 3:00 p.m. on Tuesday, June 30, 2015, Appellant Irene Bernice Benjamin entered the Mille Lacs Band Government Center, which housed tribal government agencies including the Mille Lacs Tribal Police Department and the offices of the band's Chief Executive and Solicitor General. Benjamin first went into the Chief Executive's Office to discuss her request to attend a hearing at a band-owned facility. Benjamin was "agitated" but interacting "normal[ly]" with C.G., an administrative assistant, in the Chief Executive's Office. Benjamin then went into the Solicitor General's Office, which was next door to the Chief Executive's Office and one floor above the police department.

While in the reception area of the Solicitor General's Office, Benjamin "shrieked" the name of Deputy Solicitor General D.P. D.P. emerged from a conference room and began to interact with Benjamin from the other side of the reception desk; Benjamin was agitated, speaking in a "sharp" voice about her request to attend the hearing. When D.P. repeatedly informed Benjamin that the Solicitor General's Office could not and would not authorize her attendance at the hearing, Benjamin became "increasingly agitated" and "increasingly hostile" toward D.P. She escalated to "cursing, yelling, . . . and screaming," and she leaned on the reception desk as she used her fists to bang the desk "violently."

2

Benjamin was "inches" from D.P.'s face as she yelled at him, "essentially . . . chest-to-chest."

D.P. found Benjamin's actions "really disconcerting." He thought that Benjamin might strike him or otherwise "get violent," and although he was not concerned for his physical safety, he was worried about how the conflict with Benjamin might impact his relatively new employment at the Solicitor General's Office. D.P. attempted to call the police, but the call did not go through because D.P. did not know how to operate the office phone system. He felt "stuck" and did not know what to do, so he "stopped . . . reacting to what [Benjamin] was saying" and repeatedly told her to leave.

Meanwhile, C.G. heard from her work area in the Chief Executive's Office Benjamin's "[l]oud yelling" in the Solicitor General's Office. The yelling seemed "negative" and was "very loud," interfering with C.G.'s work and that of other people in the area. C.G. called the police because she felt that Benjamin was being "disruptive" to the government.

Officer Julian Walker responded to C.G.'s call by walking up the two flights of stairs from the police department to the Solicitor General's Office. Upon exiting the police department, Officer Walker heard "yelling and screaming." When he reached the Solicitor General's Office, he saw Benjamin "[y]elling" and "screaming" at D.P. "in close proximity [to] him." D.P. appeared "uncomfortable." Officer Walker arrested Benjamin and took her into custody.

Respondent State of Minnesota charged Benjamin with misdemeanor disorderly conduct under Minn. Stat. § 609.72, subd. 1(3) (2014), which criminalizes one's

3

"engage[ment] in offensive, obscene, abusive, boisterous, or noisy conduct or [one's use of] offensive, obscene, or abusive language tending reasonably to arouse alarm, anger, or resentment in others." A jury found Benjamin guilty as charged; the district court adjudicated Benjamin's guilt and sentenced her to six months' unsupervised probation.

Benjamin appeals.

## D E C I S I O N

Benjamin first argues that her conviction must be reversed because her actions in the Solicitor General's Office were protected by the First Amendment. Although Benjamin may attempt to frame this argument as an as-applied overbreadth challenge to the disorderly-conduct statute, the state treats this argument as a challenge to the sufficiency of the evidence to support Benjamin's conviction of disorderly conduct. In substance, Benjamin argues that speech and expressive conduct may be criminalized only if they constitute "fighting words," that Benjamin's actions were limited to speech and expressive conduct that did not constitute "fighting words," and that Benjamin's actions therefore cannot support her disorderly-conduct conviction. Whether analyzed as an as-applied overbreadth challenge or as an evidentiary-sufficiency challenge, Benjamin's argument fails.

It is true that "[t]he Minnesota Supreme Court has ruled that a conviction of disorderly conduct cannot be predicated only on a person's words unless those words are 'fighting words,'" *State v. McCarthy*, 659 N.W.2d 808, 810-11 (Minn. App. 2003) (quoting *In re Welfare of S.L.J.*, 263 N.W.2d 412, 419 (Minn. 1978)), defined as "words 'which by their very utterance inflict injury or tend to incite an immediate breach of the peace,'" *State*

4

*v. Crawley*, 819 N.W.2d 94, 104 n.9 (Minn. 2012) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S. Ct. 766, 769 (1942)). In so ruling, the supreme court reasoned as follows:

> [I]t is clear that, as written, § 609.72, subd. 1(3), is both overly broad and vague. Since the statute punishes words alone— "offensive, obscene, or abusive language"—, it must be declared unconstitutional as a violation of the First and Fourteenth Amendments unless it only proscribes the use of "fighting words." Section 609.72, subd. 1(3), however, punishes words that merely tend to "arouse alarm, anger, or resentment in others" rather than only words which by their very utterance inflict injury or tend to incite an immediate breach of the peace. Since the statute does not satisfy the definition of "fighting words," it is unconstitutional on its face.
>
> Although § 609.72, subd. 1(3), clearly contemplates punishment for speech that is protected under the First and Fourteenth Amendments, we can uphold its constitutionality by construing it narrowly to refer only to "fighting words."

*S.L.J.*, 263 N.W.2d at 418-19 (footnotes omitted) (quotation omitted).

As noted above, the disorderly-conduct statute criminalizes both the use of "offensive, obscene, or abusive language" and the "engage[ment] in offensive, obscene, abusive, boisterous, or noisy conduct." Minn. Stat. § 609.72, subd. 1(3). We have distinguished between the criminalization of "mere speech," *S.L.J.*, 263 N.W.2d at 420, or "words alone," *In re Welfare of T.L.S.*, 713 N.W.2d 877, 880 (Minn. App. 2006), and the criminalization of actions that include but are not limited to speech, as follows:

> Although [under *S.L.J.*] the disorderly conduct statute prohibits only "fighting words" as applied to speech *content*, the disorderly shouting of otherwise protected speech or engaging in other boisterous or noisy *conduct* may still trigger punishment under the statute without offending the First Amendment. In that circumstance, it is not the speech itself that

5

> triggers punishment; the statute may be applied to punish the manner of delivery of speech when the disorderly nature of the speech does not depend on its content.

*T.L.S.*, 713 N.W.2d at 881 (quotation marks omitted); *see also McCarthy*, 659 N.W.2d at 811 ("In determining if [the defendant's] actions were sufficient to support a conviction of disorderly conduct, we view his words, coupled with his conduct and physical movements, and measure them as a package against the controlling statute." (quotation omitted)). Indeed, we have unequivocally stated that "the narrowing construction of *S.L.J.* does not apply to the conduct-based proscriptions in the disorderly conduct statute." *State v. Hensel*, 874 N.W.2d 245, 256 (Minn. App. 2016), *review granted* (Minn. Apr. 19, 2016).

But we have also stated that "[l]oud and even boisterous *conduct* is protected under Minnesota law, when that conduct is expressive and inextricably linked to a protected message." *State v. Peter*, 798 N.W.2d 552, 556 (Minn. App. 2011) (emphasis added) (quotation omitted). Persuasive authority also holds that the *S.L.J.* narrowing construction applies to "conduct . . . [that] is expressive and inextricably linked to [a] protected message." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 477-78 (8th Cir. 2010); *see State v. Eichers*, 840 N.W.2d 210, 216 (Minn. App. 2013) ("Although not binding on Minnesota state courts, Eighth Circuit caselaw can be persuasive."), *aff'd on other grounds*, 853 N.W.2d 114 (Minn. 2014).

Symbolic or expressive conduct, like actual speech, is protected by the First Amendment. *Virginia v. Black*, 538 U.S. 343, 358, 123 S. Ct. 1536, 1547 (2003). But the notion of speech-delivery conduct with an "inextricable link" to a protected message appears to have originated in *State v. Machholz*, 574 N.W.2d 415 (Minn. 1998). That case

6

involved a criminal defendant's constitutional challenges to harassment charges that were based on the defendant's actions in riding a horse approximately four times through a crowd at a gay pride event in downtown Rochester; shouting anti-gay sentiments; and "sw[i]ng[ing] the horse's lead rope at an easel that held a sign announcing the event, knocking the easel over." *Machholz*, 574 N.W.2d at 417-18. The supreme court concluded that the harassment charges must be dismissed because the statute on which they were based, which criminalized "'harassing conduct that interferes with another person or intrudes on the person's privacy or liberty,'" was overbroad both on its face and as applied to the defendant. *Id.* at 418, 421 (quoting Minn. Stat. § 609.749, subd. 2(7) (1996)). In concluding that the statute was overbroad as applied to the defendant, the court reasoned in part:

> First Amendment protection is not limited to the written or spoken word; it extends to some expressive activity, because the activity by itself may be communicative. The . . . test for determining whether conduct is sufficiently expressive to merit First Amendment protection . . . looks at whether an intent to convey a particularized message was present, and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it.
>
> . . . .
>
> . . . [The defendant]'s actions, combined with his speech, constitute expressive activity under the First Amendment. He had an intent to convey the message that he opposes the lifestyle of homosexuality, and, given the surrounding circumstances, a reasonable person viewing his activities would have understood that message of opposition. Although in some instances it is possible to separate protected speech from unprotected conduct, under the facts of this case, we cannot find a way to logically do so. The words used by [the defendant] are inextricably linked to the conduct of riding his horse through the crowd. We find it

7

> difficult to believe that [the defendant] would have been charged under this statute had he simply ridden through the crowd without saying a word.

*Id.* at 419-21 (quotation and citations omitted).

The Eighth Circuit relied on *Machholz* in considering the actions of civil-rights plaintiffs who, in "protest [of] the 'mindless' nature of consumer culture," walked erratically through a summer festival in downtown Minneapolis "in a stiff, lurching fashion" and came within three feet of bystanders while wearing zombie costumes and makeup, playing music from four bags of sound equipment, and broadcasting statements such as "get your brains here." *Baribeau*, 596 F.3d at 470-71, 475. The court concluded that the plaintiffs' actions were protected by the First Amendment, reasoning as follows:

> The plaintiffs intended to protest mindless consumerism when they dressed in zombie costumes, walked erratically, and broadcasted anti-consumerism statements over a makeshift, portable sound system. Moreover, under the surrounding circumstances, the likelihood was great that the plaintiffs' artistic and symbolic message would be understood by those who viewed the protest. . . . We acknowledge that, in some instances, it may be possible to separate a speaker's protected speech and expressive conduct from his unprotected, non-expressive conduct. However, under the facts in this case, "we cannot find a way to logically do so" because, like the defendant's conduct in *Machholz*, the plaintiffs' costumes, music, statements, and erratic walking were "inextricably linked" to their anti-consumerism message.

*Id.* at 477 (quoting *Machholz*, 574 N.W.2d at 421).

And in *Peter*, we determined that criminal defendants' conduct in loudly chanting, shrieking, yelling, and "directing some statements to individuals" while standing outside a fur and leather store in downtown Minneapolis was "inextricably intertwined" with their

8

protected message regarding animal rights. 798 N.W.2d at 553-54, 556. We cited *Machholz* and *Baribeau* in support and stated that "we do not believe that appellants' conduct . . . can be separated from their protected speech, particularly in this case involving political protest." *Id.* at 555-56. We therefore concluded that the defendants' actions could not support their disorderly-conduct convictions. *Id.* at 557.

Both *Baribeau* and *Peter* distinguished *T.L.S.* by labeling as "non-expressive" the speech-delivery conduct at issue in that case—that is, a former student's shouting of profanities and shrieking during an interaction with school administrators and uniformed police officers in a high school. *T.L.S.*, 713 N.W.2d at 879; *see Baribeau*, 596 F.3d at 478 ("Simply put, the court in *T.L.S.* was able to separate the girl's protected speech from her non-expressive shrieking. Given that non-expressive conduct is not afforded First Amendment protection, [*S.L.J.*'s] narrowing construction did not apply to such conduct."); *Peter*, 798 N.W.2d at 556 (stating that "[t]he conduct in *T.L.S.* was non-expressive conduct unrelated to any substantive message"). The *Baribeau* dissent countered thusly:

> The majority mischaracterizes *T.L.S.* as establishing only that the disorderly conduct statute may be applied to "boisterous and noisy *non-expressive* conduct." The decision of the Minnesota Court of Appeals was not so limited. Rather, the court explained that even where a person is engaged in expressive conduct or speech, it is constitutional to prohibit the objectionable manner in which that expression is communicated: "[T]he disorderly shouting of *otherwise protected speech* or engaging in other 'boisterous or noisy *conduct*' may still trigger punishment under the statute without offending the First Amendment." No narrowing construction was necessary, the court concluded, because "it is not the speech itself that triggers punishment; the statute may be applied to punish *the manner of delivery* of speech when the disorderly nature of the speech does not depend on its content."

596 F.3d at 486-87 (Colloton, J., dissenting in part) (citations omitted).

In sum, certain authority indicates that the disorderly-conduct statute must not be read to criminalize conduct with an "inextricable link" to a protected message that the actor intends to convey and that is likely to be understood by its viewers. *See Baribeau*, 596 F.3d at 475-78; *Machholz*, 574 N.W.2d at 419-22; *Peter*, 798 N.W.2d at 555-56. Other authority indicates that the disorderly-conduct statute constitutionally criminalizes speech-delivery conduct, including the volume at which one speaks and the movements of one's body as she speaks, even if the speech and the conduct do not constitute "fighting words." *See Baribeau*, 596 F.3d at 486-87 (Colloton, J., dissenting in part); *Hensel*, 874 N.W.2d at 252-53; *T.L.S.*, 713 N.W.2d at 880-81; *McCarthy*, 659 N.W.2d at 810-11. The Minnesota Supreme Court may soon provide important guidance here. *See State v. Hensel*, No. A15-0005 (Minn. Apr. 19, 2016) (order) (granting further review on relevant issues).

We resolve the case before us today by assuming without deciding that the *S.L.J.* narrowing construction *does* apply to expressive conduct because, even on that assumption, a disorderly-conduct conviction may be based on conduct that has no "inextricable link" to a protected message. *See Baribeau*, 596 F.3d at 475-78; *Machholz*, 574 N.W.2d at 419-22; *Peter*, 798 N.W.2d at 555-56. Speech-delivery conduct like the volume at which one speaks and the movements of one's body as she speaks may have an "inextricable link" to a protected message conveyed in an artistic or symbolic fashion, *see Baribeau*, 596 F.3d at 475-78, or it may have an "inextricable link" to a protected message conveyed through political protest in a public place, *see Machholz*, 574 N.W.2d at 419-22; *Peter*, 798 N.W.2d

10

at 555-56. But the volume at which one speaks and the movements of one's body as she speaks have no "inextricable link" to a protected message if the volume and movements are "unrelated to any substantive message" conveyed by the speech in its context. *See Peter*, 798 N.W.2d at 556 (explaining that *T.L.S.* "involved a juvenile who was loudly shrieking[] [and] screaming profanities in a school building" and stating that such conduct was "unrelated to any substantive message" otherwise conveyed by the juvenile's speech).

In this case, Benjamin was convicted of disorderly conduct based on her actions in a government office during normal business hours on a weekday. Benjamin's actions were a mix of speech and speech-delivery conduct, which conduct included the following: "shriek[ing]," using a "sharp" voice, "yelling," "screaming," "leaning" across the reception desk until she was "inches" from D.P.'s face and "essentially . . . chest-to-chest" with him, and "banging" the desk "violently" with her fists. Like the shouting and shrieking at issue in *T.L.S.*, this speech-delivery conduct was "unrelated to any substantive message" conveyed by Benjamin's speech. *See id.*

Because Benjamin's speech-delivery conduct had no "inextricable link" to her protected message that she disagreed with her exclusion from the hearing, the disorderly-conduct statute is not overbroad as applied to her. *See Baribeau*, 596 F.3d at 475-78; *Machholz*, 574 N.W.2d at 419-22; *Peter*, 798 N.W.2d at 555-56. Thus, even if Benjamin's speech and speech-delivery conduct did not constitute "fighting words," we must affirm her disorderly-conduct conviction if it is supported by sufficient evidence that Benjamin (1) "engage[d] in offensive, obscene, abusive, boisterous, or noisy conduct," (2) "in a public or private place," (3) "knowing, or having reasonable grounds to know that it

[would], or [would] tend to, alarm, anger or disturb others or provoke an assault or breach of the peace." Minn. Stat. § 609.72, subd. 1.

Benjamin does not contest the sufficiency of the evidence to prove these elements. In any event, "viewing the evidence presented in the light most favorable to the verdict, and assuming that the fact-finder disbelieved any evidence that conflicted with the verdict," we conclude that the evidence is sufficient in this case because the above-described "circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *See State v. Barshaw*, 879 N.W.2d 356, 363 (Minn. 2016) (quotations omitted) (describing standard of review for sufficiency of circumstantial evidence).

Benjamin also argues that the district court committed reversible error when instructing the jury as follows:

> The elements of Disorderly Conduct are, first, the defendant engaged in offensive, obscene, abusive, boisterous or noisy conduct or in offensive, obscene or abusive language tending reasonably to arouse alarm, anger or resentment in others. If you find that the defendant's conduct consisted only of offensive, obscene or abusive language, you must also find that the words were fighting words.

The challenged instruction went on to define "fighting words" and describe the remaining elements of disorderly conduct, but it did not indicate to the jury that a disorderly-conduct conviction may not be based on "offensive, obscene, abusive, boisterous or noisy conduct" that is "inextricably linked" to a protected message that the actor intends to convey and that is likely to be understood by its viewers. According to Benjamin, "[t]his instruction

12

clearly instruct[ed] the jury to go through the 'fighting words' analysis only if it found Ms. Benjamin's actions were pure speech," and "[t]his [wa]s wrong."

Benjamin and the state agree that Benjamin did not object below to the challenged instruction and that we therefore should apply the plain-error standard on our review of that instruction. On plain-error review, "[a] defendant must show (1) an error, (2) that the error was plain, and (3) that the error impacted the defendant's substantial rights." *State v. Chavez-Nelson*, 882 N.W.2d 579, 589 (Minn. 2016). Even if the defendant shows a plain error that impacted her substantial rights, that error is grounds for reversal only if "required to ensure the fairness and integrity of the judicial process." *State v. Horst*, 880 N.W.2d 24, 38 (Minn. 2016).

We again assume without deciding that the *S.L.J.* narrowing construction applies to expressive conduct. We also assume without deciding that the question whether conduct is expressive is a question of fact for the jury.[1] On these assumptions, we agree with Benjamin

---

[1] However, we note the existence of authority suggesting otherwise. *See, e.g.*, *Dennis v. United States*, 341 U.S. 494, 513, 71 S. Ct. 857, 869 (1951) ("When facts are found that establish the violation of a statute, the protection against conviction afforded by the First Amendment is a matter of law. . . . The guilt is established by proof of facts. Whether the First Amendment protects the activity which constitutes the violation of the statute must depend upon a judicial determination of the scope of the First Amendment applied to the circumstances of the case."); *Burris v. Willis Indep. Sch. Dist., Inc.*, 713 F.2d 1087, 1094 (5th Cir. 1983) ("The question whether specific conduct or speech is protected by the first amendment is ultimately a question of law."); *Ruff v. Long*, 111 F. Supp. 3d 639, 645 (E.D. Pa. 2015) (stating that question whether plaintiff's actions constituted expressive conduct was "a threshold question of law" on First Amendment retaliation claim); *Jones v. Hamic*, 875 F. Supp. 2d 1334, 1357 (M.D. Ala. 2012) (stating that "[t]he threshold question— whether the First Amendment protects the plaintiff's conduct—is a question of law for the court to decide" on First Amendment association claim), *aff'd sub nom. Jones v. Ward*, 514 F. App'x 843 (11th Cir. 2013).

that the jury should have been instructed that the "fighting words" limitation applies both to speech and to expressive conduct. Nevertheless, we conclude that any instructional error was not plain because of the split in authority detailed above. *See State v. Sanchez-Sanchez*, 879 N.W.2d 324, 330 (Minn. 2016) (stating that "[a] plain error is an error that is clear or obvious at the time of appeal," in that "it contravenes case law, a rule, or a standard of conduct." (quotations omitted)). We proceed no further in our plain-error review. *See State v. Brown*, 815 N.W.2d 609, 620 (Minn. 2012) ("If we conclude that any prong of the plain error analysis is not satisfied, we need not consider the other prongs.").

**Affirmed.**